No.  89-546

IN THE SUPREME COURT OF THE STATE OF MONTANA

1990

IN THE MATTER OF THE ESTATE OF
ALISON KIRK STENSON, a/k/a AL
STENSON,

Deceased.

APPEAL FROM:   District Court of the First Judicial District,
               In and for the County of Lewis and Clark,
               The Honorable Jeffrey M. Sherlock, Judge presiding.

COUNSEL OF RECORD:

        For Appellant:

            Gregory G. Murphy; Moulton, Bellingham, Longo &
            Mather, Billings, Montana

        For Respondent:

            W. William Leaphart, Leaphart Law Firm, Helena,
            Montana

                         Submitted on Briefs:  April 12, 1990

                                   Decided:  June 7, 1990

Filed:

_____
                  Clerk

Justice Fred J. Weber delivered the Opinion of the Court.

This is an appeal from an order by the District Court, First Judicial District, Lewis and Clark County, Montana, which ordered the personal representative of an estate to pay certain attorney fees. The personal representative appeals. We affirm.

The sole issue presented for our review is whether the District Court erred in awarding attorney fees pursuant to § 72-3-632, MCA.

Alison Stenson died as a result of an accident at a mine owned by the Pegasus Gold Corporation (Pegasus). On the morning of November 11, 1986, Alison Stenson was working near the bucket end of a Caterpillar front end loader. A co-worker informed Alison Stenson he was going to move the bucket and proceeded to do so. The co-worker then found that Alison Stenson was caught between the bucket and the differential. The co-worker released the bucket and ran for help. Pegusus had an ambulance at the site but it was not operational. An ambulance was called from Boulder, Montana, but did not arrive for over an hour after the accident. Alison Stenson died while being transported by ambulance to the hospital. Physicians reported that his death was caused by blood loss, and that if Alison Stenson had received transfusions earlier, his chances of survival would have been good.

Alison Stenson was thirty years old at the time of the accident, and unmarried. His father, Roger Stenson, talked to attorney Robert Woodahl, and the law firm of Luxan and Murfitt, and on November 19, 1986, signed a contingency fee agreement with Mr.

2

Woodahl and Luxan and Murfitt providing for an attorneys' fee of one third of any settlement received from a wrongful death action. Roger Stenson was appointed personal representative of his son's estate in December of 1986. The retained lawyers investigated, interviewed witnesses, and after research developed a theory of third party liability. In May 1987, Luxan and Murfitt presented a settlement brochure to Pegusus' insurance company on the wrongful death claim.

In July 1987, Roger Stenson received a questionnaire from the Social Security Administration concerning a claim that had been made for benefits. This claim was made by Rebecca Rebel Autumn Countryman, who claimed to be the minor daughter of the deceased, Alison Stenson. Mr. and Mrs. Roger Stenson informed the Social Security Administration and their attorneys that to their knowledge their son had no children, and that they did not know Rebecca Countryman.

Although Luxan and Murfitt had presented the settlement brochure to the insurance company, they suspended further negotiations because of the issue as to the proper heirs to the estate. They then initiated an heirship or paternity proceeding. In September 1987, Luxan and Murfitt advised Roger Stenson by letter that they would be charging $85 per hour, plus costs, for their work in regard to the heirship matter. They advised that the contingency arrangement in regard to the wrongful death action would remain unchanged.

By the spring of 1988, after an exhaustive investigation on

3

the part of Luxan and Murfitt, and after a hearing on the matter, it became clear that Rebecca Countryman was in fact the daughter of Alison Stenson, and the court entered an order to that effect. On May 19, 1988, Luxan and Murfitt moved to withdraw as counsel for Roger Stenson, and on May 24, 1988, that order was granted by the court. Likewise, on June 1, 1988, Roger Stenson moved to withdraw as personal representative. That motion was also granted.

On June 24, 1988, Mr. Craig Buehler, an attorney, was appointed successor personal representative for the estate. Mr. Buehler proceeded to settle the wrongful death survivorship claim for a structured settlement of the present value of approximately $300,000. Mr. Buehler initially received fees of $50,000, $300 per month until Rebecca becomes twenty-two, with another $50,000 to be paid when she becomes twenty-two.

Luxan and Murfitt filed a creditor's claim and an attorney fee lien against the estate for the work they performed on behalf of the estate. At District Court, Luxan and Murfitt acknowledged that the contingency arrangement was terminated prior to settlement. The fees submitted, in the total amount of $36,048, were based upon an hourly rate and actual costs. Mr. Robert Woodahl submitted a statement of fees in the amount of $10,763, which represented 116.5 hours at $85 per hour, plus approximately $855 in actual costs. The firm of Luxan and Murfitt submitted a statement of fees in the amount of $25,284, which represented attorney fees billed at an average hourly rate of $75 per hour. The statement also included approximately $340 of itemized costs.

4

As personal representative, Mr. Buehler moved to dissolve the lien and deny the creditor's claim. Both parties filed cross motions for summary judgment with supporting memorandum. The District Court granted summary judgment in favor of Luxan and Murfitt and Mr. Woodahl on the issue of entitlement. The court concluded there were no genuine issues of material fact as to whether the attorneys were entitled to some fees; however, the court reserved judgment on whether an award of fees should be based on a portion of statutorily allowable fees. The court also reserved judgment on the value of the services. The court further ordered that $50,000, which was set aside from the estate for attorney fees, be held in trust pending the outcome of the dispute.

On June 15, 1989, the court held a hearing on the remaining attorney fee issues. At that hearing testimony was taken from Mr. Woodahl and two attorneys from the Luxan and Murfitt firm. Two other local attorneys testified in regard to billing practices of law firms in the area. Additionally, Ms. Countryman, the mother of Rebecca Countryman, testified.

Following the hearing and further briefing, the court issued its order awarding Mr. Woodahl and Luxan and Murfitt their total requested fees and costs in the amount of $36,048. The District Court concluded that the work by the attorneys was performed on behalf of Roger Stenson, in his capacity as personal representative of the estate. The District Court based its order on a finding that Mr. Stenson had pursued the heirship matter "in good faith" as required by § 72-3-632, MCA, and that both the wrongful death

survivorship action and the heirship proceeding benefitted the estate. The court concluded that the attorney fees were recoverable on a quantum meruit basis, and that attorney fees were also recoverable pursuant to § 72-3-632, MCA. The court found the fees to be reasonable. In its order the court also took note of the fact that the award does not affect the beneficiary of the estate; rather the dispute is between attorneys in regard to who should receive the compensation; that Mr. Buehler has been handsomely rewarded for his efforts in that he has already received $50,000 and will receive $300 per month; and that the award will leave Mr. Buehler with another large fee even after paying the other attorneys.

On appeal Mr. Buehler contends that under the statutes, the attorneys are limited to attorney fees one and one half times the compensation allowable to the personal representative; that there can be no quantum meruit because there was a contingency fee agreement; and that the contingency fee agreement cannot control because the settlement was not completed. We agree with the conclusion of the District Court that the award of attorney fees pursuant to § 72-3-632, MCA, was proper. Section 72-3-632, MCA, states:

> **Expenses of personal representative in estate litigation.** If any personal representative or person nominated as personal representative defends or prosecutes any proceeding in good faith, whether successful or not, he is entitled to receive from the estate his necessary expenses and disbursements, including reasonable attorneys' fees incurred.

Our standard of review on the issue of fees is stated in Matter of

Estate of Stone (Mont. 1989), 768 P.2d 334, 336, 46 St.Rep. 134, 136:

> The review of fees paid or taken by a personal representative is left to the sound discretion of the District Court. We will not overturn that decision absent a showing of abuse of discretion, and the court's findings of fact will be upheld unless clearly erroneous. (Citations omitted.)

In Matter of Estate of Stone, the Court stated that § 72-3-632, MCA, deals explicitly with litigation expenses incurred by the personal representative on behalf of the estate and allows for a reasonable attorney fee for actions maintained in good faith. The District Court determined that the actions had been prosecuted in good faith and that the fees were reasonable. After a review of the record, we conclude that substantial credible evidence supports those findings.

Mr. Buehler in substance agrees that the legal services on the wrongful death claim were in good faith. He does contend that Mr. Stenson did not investigate the heirship issue in good faith, contending that Mr. Stenson knew that Rebecca Countryman was the daughter of Alison Stenson and therefore the sole heir of the estate. While there is a contradiction in the record, there clearly is substantial evidence from which the court could conclude that Mr. and Mrs. Stenson had no knowledge that Rebecca Countryman was their son's daughter. The fact that Mr. Stenson and Luxan and Murfitt discontinued settlement negotiations on the wrongful death action in order to investigate the paternity issue is an indication of good faith. Luxan and Murfitt also filed a claim with Workers'

Compensation on behalf of Rebecca Countryman to prevent her claim from being time barred. We conclude there is substantial credible evidence supporting the findings of the District Court that the proceedings were brought in good faith.

On the issue of the reasonableness of the fee, this Court has previously stated that "[w]ith regard to legal services, a reasonable fee should be ascertained by considering the time spent, the nature of the service, and the skill and experience required." Matter of Estate of Stone, 768 P.2d at 336; see also Matter of Estate of Painter (Colo.App. 1977), 567 P.2d 820, on remand, 671 P.2d 1331 (1983). Additionally, to be reasonable the fees must be related to services rendered to benefit the estate, rather than to benefit the personal interest of an administrator or estate counsel. Matter of Estate of Painter, 671 P.2d at 1334.

At the hearing Patrick Hooks, an attorney in the Helena area, testified that he had reviewed the files and time sheets of Luxan and Murfitt and considered their fees to be reasonable and in accord with fees charged in the same geographical area. He testified that the wrongful death survivorship action had been developed upon an "ingenious" theory of third party liability which had proved very successful. He testified that the heirship proceeding was complicated since the putative father was deceased, preventing proof of paternity by the usual blood tests. Mr. Hooks testified that the work done by the attorneys demonstrated a high level of experience and skill. We conclude that substantial credible evidence, including detailed records of the work which was

8

done, supports the reasonableness of the fees.

The District Court also found that the work of Mr. Woodahl and Luxan and Murfitt benefitted the estate and its rightful heir. Had the wrongful death survivorship action not been successfully pursued, it appears that the estate of Alison Stenson would have consisted of a car and a motorcycle, for a total value of approximately $3400. The attorneys here formulated a theory whereby the estate was not limited to workers' compensation benefits as the exclusive remedy, but was able to realize a structured settlement of the present value of $300,000. Additionally, the heirship proceeding, for which the Luxan and Murfitt firm did extensive investigation, resulted in the determination of the rightful heir. We conclude that the services of Mr. Woodahl and the Luxan and Murfitt firm were a substantial benefit to the estate.

We conclude that the District Court did not err in awarding attorney fees pursuant to § 72-3-632, MCA. We affirm the award of attorney fees by the District Court.

_____
Justice

We Concur:

_____
Chief Justice

_____

9

_William E. Hunt Sr._

_R. C. McDonough_

_Diane G. Barz_
_____
Justices

Justice John C. Sheehy did not participate.