87 P.3d 89

**In the Matter of the Estate of Kathryn W. GORDON, Deceased.**

**June Davis Pierce; Albert Clair Pierce II; Kathryn Pierce Ward; Susan Panchision; Janet Pierce Pesgraves; Kathryn Davis, Plaintiffs–Appellees,**

v.

**Nancy Molet, as Personal Representative, Defendant–Appellant.**

No. 1 CA–CV 02–0353.

Court of Appeals of Arizona, Division 1, Department A.

March 30, 2004.

Blunt & Associates, P.C. By A. Paul Blunt, Scottsdale, Attorneys for Appellant.

Robert D. Barlow, Phoenix, Attorney for Appellees.

## OPINION

SULT, Judge.

¶ 1 Arizona Revised Statutes ("A.R.S.") § 14–3720 (1995) permits a personal repre-sentative of a decedent's estate to be reim-bursed attorneys' fees incurred in prose-cuting or defending a claim, even though unsuccessfully, so long as the litigation is undertaken in good faith. The question raised in this appeal is whether our prior cases applying the statute have judicially engrafted a requirement that the personal representative also demonstrate that the litigation activities were a benefit to the estate. This opinion clarifies that "benefit to the estate" is not a statutory element separate from and additional to the re-quirement of good faith. However, we do conclude that benefit to the estate is a rel-evant subject for inquiry because its pres-ence or absence serves as a useful in-terpretative aid to assist the trial court in determining whether the personal repre-sentative litigated in good faith.

¶ 2 In a proceeding defended by appellant Nancy Molet, she incurred attorneys' fees for which the trial court disallowed reimburse-ment. On this record, we cannot ascertain whether the trial court considered the ques-tion of good faith in determining the issue. In any event, because good faith under § 14–3720 has not been clearly defined in our jurisprudence, we must do so and then re-mand this matter to permit the trial court to conduct a further inquiry applying the clari-fied meaning of good faith set forth herein.

## BACKGROUND

¶ 3 Appellant is the sister of Kathryn Gor-don who passed away on August 21, 1999. An informal probate was commenced in supe-rior court and appellant was appointed the personal representative of her sister's estate per Kathryn's nomination in her will of Octo-ber 6, 1998. Appellant also succeeded Ka-thryn as trustee of the Gordon Trust, which is the sole beneficiary under Kathryn's will. The beneficiaries of the trust include Ka-thryn's daughter June and five of Kathryn's grandchildren (collectively "appellees"), as well as appellant herself.

¶ 4 After appellees reviewed the state-ments submitted by appellant for her ser-vices and those of the estate's attorney, Har-vey Finks, appellees filed a petition alleging that the fees were unreasonable. Appellees

requested that appellant be surcharged for excessive personal representative and attorneys' fees and that restrictions be imposed on the trust and estate assets pending a resolution of the issues in the petition. Appellees also asked that appellant be removed as personal representative/trustee and that beneficiary Albert Pierce be substituted in her place.

¶ 5 Mr. Finks thereupon resigned as the attorney for the estate because of the potential of being called as a witness. Appellant hired A. Paul Blunt to defend her against appellees' allegations.

¶ 6 At the initial hearing on appellees' petition, the parties stipulated that there would be no further disbursements of the estate without a court order. The parties later agreed to submit the fees dispute to arbitration. Appellees apparently abandoned their request to remove appellant as personal representative/trustee as no further action was ever taken on that request.

¶ 7 At the arbitration hearing, the arbitrator found that the decedent intended that appellant be reimbursed at the rate of fifty dollars per hour for her services as personal representative, the rate appellant had been charging. Notwithstanding, the arbitrator reduced the fees appellant paid herself from $10,885.50 to $6,150 after considering evidence regarding the necessity and frequency of appellant's services. The arbitrator also reduced Finks' attorneys' fees from $25,710 to $23,200.

¶ 8 Following arbitration, appellant submitted to the trial court an application for approval of the attorneys' fees she incurred in connection with attorney Blunt's representation of her in the arbitration proceeding. Appellees objected, claiming that Blunt's attorneys' fees should not be paid from the estate. After a telephonic hearing on the matter, the trial court denied appellant's application, finding that "it would be inappropriate to also assess the estate the additional attorney fees incurred by the Personal Representative." It is from the order denying attorneys' fees incurred in the arbitration proceeding that appellant has timely appealed.

## ISSUES

¶ 9 Appellant asserts that the trial court based its denial of fees upon appellees' argument that attorney Blunt's services benefitted only appellant and not the estate as required by § 14–3720. Appellant posits that this approach misreads the statute which requires only that a personal representative act in good faith in conducting litigation, not that the litigation also benefit the estate. On this record, appellant argues, we should find that appellant did act in good faith and reverse the trial court's denial of reimbursement.

¶ 10 Appellees respond by pointing to the precedents from this court holding that § 14–3720 does require a finding of a benefit to the estate as a precondition to reimbursement. Appellees then argue that as a matter of law attorneys' fees incurred by a personal representative in defending against an attack on her compensation as well as on that of the estate's attorney cannot be construed as benefitting the estate. Therefore, appellees conclude, we should affirm.

¶ 11 Our first task is to determine what place, if any, the concept of benefit to the estate has in a § 14–3720 good faith analysis. If benefit to the estate plays a role, what exactly does the term encompass? And if benefit to the estate is relevant, can we decide on this record that appellant's defense of her compensation and that paid to the estate's attorney constituted such a benefit?

## ANALYSIS

### Good Faith and Benefit to the Estate

¶ 12 We begin our analysis with the text of the statute. Section 14–3720 provides:

If any personal representative or person nominated as personal representative defends or prosecutes any proceeding in good faith, whether successful or not he is entitled to receive from the estate his necessary expenses and disbursements including reasonable attorneys' fees incurred.

While appellant is correct that § 14–3720 does not explicitly require a benefit to the estate, our case law construing the statute seems to impose this requirement. In *Mat-*

*ter of Stephens' Estate*, 117 Ariz. 579, 585, 574 P.2d 67, 73 (App.1978), we construed a request for reimbursement under § 14–3720 and found that "the only circumstances under which [the personal representative] may be reimbursed for her attorney's fees is if services rendered by her attorney benefitted the estate." In *Matter of Estes' Estate*, 134 Ariz. 70, 80, 654 P.2d 4, 14 (App.1982), we relied on *Stephens* in holding that "[a]n executor is entitled to reimbursement for attorneys' fees only for services rendered to benefit the estate, not if the services were rendered to protect the executor's personal interests."

¶ 13 *Matter of Killen's Estate*, 188 Ariz. 569, 937 P.2d 1375 (App.1996) involved a dispute over attorneys' fees incurred in a will contest. Before addressing the principal issue, we commented that the benefit to the estate requirement was met because defense of a will against a charge of invalidity due to lack of testamentary capacity automatically benefits the estate. *Id.* at 575, 937 P.2d at 1381. Thus it was not necessary for the personal representative to independently prove, or the probate court to specifically find, that the estate was benefitted by the defense. *Id.*

¶ 14 None of these cases, however, explains how § 14–3720 acquired a benefit to the estate component when the statute itself makes no mention of the concept. To help solve this conundrum, we have reviewed the jurisprudence of those of our sister states which, like Arizona, have adopted verbatim Uniform Probate Code § 3–720 from which our § 14–3720 is derived. Looking to sister states for interpretative assistance is appropriate when construing a provision derived from one of the Uniform Acts because national uniformity in interpretation is an important goal. *Canon School District No. 50 v. W.E.S. Construction Co., Inc.*, 180 Ariz. 148, 154, 882 P.2d 1274, 1280 (1994), *citing Holiday Inns, Inc. v. Olsen*, 692 S.W.2d 850, 853 (Tenn.1985) (finding that courts should seriously regard interpretations given to uniform laws by other state courts and strive for uniformity in construction where possible).

¶ 15 Unfortunately for the goal of uniformity, there is no consistent application of the benefit to the estate concept among those states that have adopted Uniform Probate Code § 3–720. Several states have flatly rejected inserting a benefit to the estate requirement into the analysis, noting that the statutory language plainly requires a showing only of good faith. Consequently, these courts have stated that they will not "judicially engraft" a benefit to the estate requirement onto their statute. *Enders v. Parker*, 66 P.3d 11, 14 (Alaska 2003); *In re Estate of Evenson*, 505 N.W.2d 90, 92 (Minn.App.1993); *In re Estate of Watkins*, 243 Neb. 583, 501 N.W.2d 292, 296 (1993); *Estate of Frietze*, 126 N.M. 16, 966 P.2d 183, 187 (App.1998).

¶ 16 By contrast, several other states have determined that it is not enough that the services were rendered in good faith; to justify reimbursement under the statute, those services must also be found to have benefitted the estate. *Estate of Painter*, 671 P.2d 1331, 1334 (Colo.App.1983); *Estate of Herbert*, 91 Hawai'i 107, 979 P.2d 1133, 1136–37 (1999) (implied from court's reliance on Florida rule); *Kolouch v. First Security Bank*, 128 Idaho 186, 911 P.2d 779, 786 (App. 1996); *Estate of Stowell*, 595 A.2d 1022, 1026–27 (Me.1991); *Estate of Stenson*, 243 Mont. 17, 792 P.2d 1119, 1121–22 (1990); *Estate of Flaherty*, 484 N.W.2d 515, 518 (N.D. 1992); *Estate of Klauzer*, 604 N.W.2d 474, 481–82 (S.D.2000). We find no assistance from these cases, however, because none explains how or why the benefit to the estate requirement became part of their statutory reimbursement formula, other than to cite to similarly unenlightening precedents, some of which predate that jurisdiction's adoption of the Uniform Probate Code.

¶ 17 Of the remaining states that have adopted the Code, South Carolina and Utah appear not to have addressed the question. *See* South Carolina Probate Code § 62–3–720 (WESTLAW through 2003 Sess.); Utah Code Annotated § 75–3–719 (WESTLAW through 2003 2nd Special Sess.). Florida has a significant number of reported decisions supporting a benefit to the estate requirement. *See, e.g., Estate of Brock*, 695 So.2d 714 (Fla.App.1996). However, Florida's decisions are inapposite because, although Florida is a Uniform Probate Code jurisdiction, its reimbursement statute is substantially differ-

ent from and does not track Uniform Code § 3–720. *See* West's Florida Statutes Annotated § 733.106 (WESTLAW through 2003).

¶ 18 The question thus remains open. Do we apply our precedents and require that the estate benefit from the services for which reimbursement is sought, or do we eliminate this requirement as not justified by the statute's language? On the one hand, *stare decisis* requires that we follow our own precedents except in the most unusual of circumstances. We expressed this principle some time ago in *Neil B. McGinnis Equipment Co. v. Henson,* 2 Ariz.App. 59, 62, 406 P.2d 409, 412 (1965), where we stated that "[w]hen we disagree with a prior decision of our Court ... we should do so only upon the most cogent of reasons being presented."

¶ 19 On the other hand, we are constrained by the principle of statutory construction that if a statute's meaning is plainly apparent from its language, we simply are not authorized to add anything to it unless an absurdity would otherwise result. *Marquez v. Rapid Harvest Co.,* 89 Ariz. 62, 64, 358 P.2d 168, 170 (1960). In this regard, we agree that if § 14–3720 plainly is not susceptible to the benefit to the estate reading that *Stephens, Estes* and *Killen* have given it, this would be a cogent reason not to follow those cases because "[t]he plain meaning of a statute must be observed." *Local 266, I.B.E.W. v. Salt River Project,* 78 Ariz. 30, 38, 275 P.2d 393, 399 (1954). But is the meaning of this statute so plain that benefit to the estate is unequivocally excludable?

¶ 20 In considering this question, we are drawn to the legislature's use of the phrase "good faith," a phrase that appears frequently in various statutory contexts and, with respect to an actor's state of mind, generally connotes honesty-in-fact accompanied by honorable intentions. *See Snow v. Western Savings & Loan Association,* 152 Ariz. 27, 36, 730 P.2d 204, 213 (1986) ("[a] determination of good faith involves an inquiry into the party's motive and purpose as well as actual intent"). In the case law construing good faith, the question often arises whether the legislature intended that it be determined by a subjective measuring approach or by applying an objective standard. *See, e.g., San Tan*

*Irrigation District v. Wells Fargo Bank,* 197 Ariz. 193, 197, ¶ 13, 3 P.3d 1113, 1117 (App. 2000) (A.R.S. § 47–3405); *Gilbert v. Board of Medical Examiners,* 155 Ariz. 169, 180, 745 P.2d 617, 628 (App.1987) (A.R.S. § 12–341.01(C))(superseded by statute on other grounds as stated in *Goodman v. Samaritan Health System,* 195 Ariz. 502, 508 n. 7, ¶ 25, 990 P.2d 1061, 1067 n. 7 (App.1999)). If the statute in which the phrase appears does not itself provide the answer, an ambiguity regarding legislative intent is thereby created that requires resort to the process of statutory construction. *Kyle v. Daniels,* 198 Ariz. 304, 306, ¶ 8, 9 P.3d 1043, 1045 (2000).

¶ 21 It is precisely this ambiguity that we encounter in § 14–3720 where good faith is not defined. Did the legislature intend that a personal representative's state of mind in conducting litigation be determined subjectively or objectively? This is the ambiguity we must resolve and, as part of this effort, we can determine if the benefit to the estate concept contributes to the resolution.

¶ 22 We begin with consideration of a subjective measuring standard. Determining good faith subjectively would entail simply eliciting from the personal representative directly what her motive and purposes were in conducting litigation and whether she was honest in her dealings in connection with the litigation. If the personal representative were credible, the inquiry would conclude with a finding of good faith and no account would be taken of any surrounding circumstances that might militate for a contrary conclusion.

¶ 23 Extended analysis is not required to conclude that the legislature probably did not intend that good faith under § 14–3720 be measured using such an approach. If a subjective standard were used, a personal representative with honorable intentions but little common sense could incur significant attorneys' fees by inappropriately defending against valid claims or frivolously prosecuting invalid ones. Reimbursement would nevertheless be required simply upon a credible assertion of good faith. We therefore reject the subjective approach and instead accord the more sensible construction to § 14–3720 that the good faith element of

the statute must be ascertained objectively. *Lake Havasu City v. Mohave County*, 138 Ariz. 552, 557, 675 P.2d 1371, 1376 (App. 1983).

■ ¶ 24 An objective determination of the state of mind possessed by an actor in connection with his conduct is usually accomplished by examining all the circumstances surrounding the conduct. *Arizona Department of Revenue v. Arizona Outdoor Advertisers, Inc.*, 202 Ariz. 93, 99, ¶¶ 31–32, 41 P.3d 631, 637 (App.2002). From these circumstances the fact-finder can infer the relevant state of mind which, as regards § 14–3720 good faith, would be the motive and purposes of the personal representative in conducting litigation and whether she was honest in her dealings. *See id.* at 99, ¶ 32, 41 P.3d at 637. And it is important to note that among the circumstances to be considered would be any subjective expressions by the personal representation regarding her motives, purposes, or honesty-in-fact. *Ryan v. Territory*, 12 Ariz. 208, 211, 100 P. 770, 772 (1909). While not controlling, these expressions are relevant and must also be included for consideration when conducting an objective inquiry. *Arizona Outdoor*, 202 Ariz. at 99, ¶¶ 31–32, 41 P.3d at 637.

■ ¶ 25 It is in this objective inquiry setting that we find a place for the benefit to the estate concept. An objective method of determining good faith includes considering all relevant surrounding circumstances. Benefit to the estate is one such circumstance that can assist in determining the motivation with which litigation was conducted. Together with all other relevant circumstances, whether the litigation constituted a benefit will help the fact-finder ascertain whether a personal representative litigated in good faith.

¶ 26 We emphasize that the presence or absence of a benefit to the estate merely tends to establish the existence or not of good faith and is only one factor to be considered. It would be inappropriate to treat the concept as an independent requirement that alone could resolve the issue. According it such conclusive effect would constitute engrafting onto the statute an element that the legislature did not include. *Cf. Enders*, 66

P.3d at 15. Our effort, consequently, is to demonstrate that benefit to the estate is merely a helpful investigative aid to a court charged with objectively determining the existence of good faith.

## The Meaning of Benefit

■ ¶ 27 Having found the proper niche for the benefit to the estate concept, we next explain what it entails. As applied to § 14–3720, benefit to the estate is given a broader meaning than a lay understanding of the phrase might encompass. The statute is clear that good faith is not determined by whether the personal representative wins the litigation. Thus, attorneys' fees incurred in an unsuccessful prosecution or defense of a claim can constitute a benefit to the estate and be treated as reimbursable. *Flaherty*, 484 N.W.2d at 518. And this is true even when the result is a diminution in the value of an estate. *Id.* As the North Dakota Supreme Court explained in *Flaherty*:

> A "benefit" to an estate certainly includes services that bring about an enhancement in value or an increase in the assets of the estate. However, we believe that a "benefit" to the estate is not to be measured solely in monetary terms, but can also include a personal representative's good faith attempts to effectuate the testamentary intention set forth in a facially valid will.

*Id.* at 518 (citations omitted).

¶ 28 This broader view of "benefit" is illustrated in *Killen*, where the niece of the decedent was appointed personal representative under a will that was subsequently attacked by other heirs on the ground that the decedent lacked testamentary capacity. 188 Ariz. at 571, 937 P.2d at 1377. Notwithstanding that the attack was successful, *Killen* held that the personal representative's attorneys' fees could be reimbursable if no bad faith was involved. *Id.* at 575, 937 P.2d at 1381. Because a probated will presumptively reflects the wishes of the decedent, a personal representative's attempt to defend that will by definition benefits the estate. *Id.*

¶ 29 The *Killen* court's analysis is also instructive on how benefit to the estate is

utilized as an investigative aid, not a conclusive factor. The court noted that the primary question under the statute was the presence or absence of good faith. *Id.* The court treated benefit to the estate as only one factor to be considered, remarking also on the personal representative being a beneficiary under the will as well as on her ultimate removal from this position for reasons unrelated to the invalidity of the will. *Id.* at 575–76, 937 P.2d at 1381–82. In the court's analysis, these factors also bore on the resolution of the good faith issue. *Id.*

¶ 30 *Killen* teaches that a decedent's wishes can inform a benefit to the estate analysis. If a personal representative's litigation activity can be said to further a directive of the decedent expressed either in his will or in some other provable context, the action can be said to benefit the estate even if the litigation is unsuccessful. For example, a personal representative's unsuccessful defense against a petition to remove him from that position may be a benefit to the estate if he was serving as personal representative because he had been nominated by the decedent in his will. Another illustration of a benefit to the estate based on a decedent's wishes could be a personal representative's defense of a rate of compensation approved by the decedent.

### Disposition

¶ 31 We turn now to a more detailed discussion of the parties' positions in this appeal. Appellant has argued that benefit to the estate should not be a part of a good faith analysis, and we should decline to follow our precedents holding otherwise. As this opinion illustrates, we decline appellant's invitation to reject our precedents. Rather, we continue to follow them, thereby honoring *stare decisis* but doing so in a way that harmonizes those precedents with the legislative intent found in § 14–3720.

¶ 32 Appellant alternatively urges that she has satisfied the good faith requirement and we should so hold on this record. Appellant points out that there is no evidence that she engaged in fraud or self-dealing with respect to the estate. Moreover, appellees' petition sought her removal as personal representa-

tive/trustee and she successfully defended against this effort inasmuch as appellees dropped this demand. She also successfully defended both her fees and those paid to attorney Finks in the sense that while both were reduced by the arbitrator, she still prevailed on the bulk of the claim. Appellant also asserts that the decedent not only wanted appellant to act in a representative capacity, but also, as the arbitrator specifically found, approved appellant's hourly fee, illustrating that decedent wished appellant to perform the services she did for the compensation she charged.

¶ 33 While we do agree with appellant that the factors she cites tend to support a finding that she acted in good faith, we nevertheless also decline her alternative invitation to so find as a matter of law on this record. The proper approach to resolving a good faith dispute is to first conduct an evidentiary inquiry, finding the relevant facts and then applying the correct legal standard to those facts. The trial court's ruling in this case suffers from not having the correct legal standard available when the ruling was made. This opinion now provides that standard, and it is therefore appropriate to remand the matter to the trial court to permit an inquiry to be conducted applying the correct standard.

¶ 34 Before concluding, we comment briefly on appellees' position. Appellees argue that appellant's defense of the surcharge action could not possibly benefit the estate. They contend that allowing appellant to recover attorneys' fees for defending the surcharge action essentially forces payment from appellees' inheritance. Moreover, they assert, permitting such an outcome would "chill" a beneficiary from bringing surcharge actions against personal representatives because the beneficiary would be faced with the prospect of paying a personal representative's legal fees even if the beneficiary wins. At the same time, this result would send a message to personal representatives that they have nothing to lose should they elect to charge the estate unreasonable fees. In effect, appellees argue for a *per se* rule that would always preclude an award of attorneys' fees to a personal representative who was

unsuccessful in defending a surcharge action regarding her fees or her attorneys' fees.

¶ 35 We reject appellees' request for a *per se* rule applicable to a surcharge action. First, § 14–3720 does not limit the types of litigation in which a personal representative may engage, and to exclude surcharge litigation would inject a limitation upon recovery that is contrary to the statute. The statute obviously considers a good faith requirement adequate to prevent unreasonable litigation by a personal representative.

¶ 36 Second, as for the alleged chilling effect without a *per se* rule, appellees overlook the fact that such a rule would clearly chill the willingness of individuals or institutions to serve in a representative capacity. Under appellees' approach, in a surcharge proceeding when the personal representative was successful in defending only a portion of the attorneys' fees incurred, the *entirety* of those fees would then have to be personally paid by the representative. This is hardly an attractive prospect to those asked to serve as personal representatives.

¶ 37 Finally, appellees' argument that they would be paying appellant's fees ignores the legal differences between the estate and the beneficiaries who ultimately inherit the estate. It is not the beneficiaries' money that pays for a personal representative's legal fees, it is the decedent's. The personal representative maintains title in the decedent's place to the property of the estate until the appointment is terminated. A.R.S. § 14–3711 (1995). During administration, the estate is subject to administration expenses *before* the remainder of the estate can be distributed to the beneficiaries. A.R.S. § 14–3715 (1995). It is undisputed that payment of attorneys' fees is considered an expense of administration. *Nolan's Estate*, 56 Ariz. 366, 377–78, 108 P.2d 391, 396 (1940) (construing Rev.Code 1928 § 4049, former A.R.S. § 14–661, now A.R.S. § 14–3720). Appellees therefore cannot validly claim that they end up paying for appellant's attorneys' fees, nor can they successfully assert that payment of such fees is contrary to the intention of the decedent.

## CONCLUSION

¶ 38 We vacate the order of the trial court denying appellant's request for reimbursement of attorney Blunt's fees incurred in the arbitration proceeding. We remand this matter for further proceedings consistent with this opinion.

¶ 39 Appellant requests an award of costs and attorneys' fees on appeal. Appellant is the prevailing party in an appeal which required resolution of an important question of law. Therefore, even though the case will continue in the trial court, appellant should recover attorneys' fees on appeal. *Ryder Truck Rental, Inc. v. Rodriguez*, 191 Ariz. 138, 143, 953 P.2d 178, 183 (App.1998). Pursuant to § 14–3720, we will award appellant costs and attorneys' fees upon her compliance with Rule 21, Arizona Rules of Civil Appellate Procedure. *Killen*, 188 Ariz. at 576, 937 P.2d at 1382.

CONCURRING: SHELDON H. WEISBERG, Judge.

BARKER, Judge, concurring.

¶ 40 I concur in the result but not all of the majority's analysis. For instance, I find confusing the definitions the majority uses for "subjective" as opposed to "objective" in this context. *Supra* at ¶¶ 21–25. As those terms are used by the majority, a "subjective measuring standard ... would entail simply eliciting from the personal representative directly what her motive and purposes were." *Id.* at ¶ 22. To my mind, this is more properly characterized as *direct evidence* of intent. "[O]bjective determination" is used by the majority to mean "examining all the circumstances surrounding the conduct." *Id.* at ¶ 24. To me, this is simply a statement that direct evidence, as well as indirect (or circumstantial) evidence, will be considered. Under Arizona Rules of Evidence 401 and 402, both direct and indirect evidence are admissible if relevant. Thus, I do not find the majority's use of these terms to be meaningful in this context.

¶ 41 The real question, as to subjective as contrasted with objective, is whether (1) the actual, *subjective* good faith of the personal representative is the standard to determine

the personal representative's good faith (or lack of it) or (2) an *objective* or reasonable person standard is the standard by which a personal representative's good faith (or lack of it) is determined. Because this issue was not briefed, we do not address it. Whatever standard applies, both direct and indirect evidence, if relevant, should be considered.

¶ 42 My analysis of the principal issue, in simplified form, is as follows. The statute does not require a finding of benefit to the estate; it requires "good faith" and that the entitlement to expenditures be for those that are "necessary." A.R.S. § 14–3720. While the concepts of "good faith" and "benefit to the estate" may typically be the same, it does not follow that they always are.

¶ 43 Because this court previously held that "the only circumstances under which [the personal representative] may be reimbursed for her attorney's fees is if services rendered by her attorney benefitted the estate," *In re Estate of Stephens,* 117 Ariz. 579, 585, 574 P.2d 67, 73 (App.1978), and because the trial judge was bound to follow that holding, *e.g., Francis v. Ariz. Dep't of Transp.,* 192 Ariz. 269, 271, ¶ 10, 963 P.2d 1092, 1094 (App.1998) ("superior court is bound by decisions of the court of appeals"), reversal is required. Stare decisis must give way in the face of a clear error in the construction of a statute. *See, e.g., State v. Pena,* 140 Ariz. 545, 548, 683 P.2d 744, 747 (App.1983) (declining to follow prior precedent, "to avoid the perpetuation of error," when it was based on an error in statutory interpretation). It is more important for the court to be right than to necessarily follow one of our own earlier decisions. *See, e.g., Lowing v. Allstate Ins. Co.,* 176 Ariz. 101, 107, 859 P.2d 724, 730 (1993) ("[Stare decisis] is a doctrine of persuasion, however, and not an ironclad rule. Ultimately, the degree of adherence demanded by a prior judicial decision depends upon its merits, and it may be abandoned if … it was clearly erroneous or manifestly wrong.").

¶ 44 I agree with the majority that "benefit to the estate" is a factor that may be considered, but is not dispositive, when determining whether a personal representative has or has not acted in "good faith" under the statute.

¶ 45 For these reasons, I agree that this matter must be vacated and remanded.