ESPINOSA, Judge,
dissenting.
¶ 311 respectfully disagree with the majority’s conclusion because, simply stated, there is insufficient justification, both legal and factual, for interfering with the damages determination of the properly instructed jury in this case. If the jury was indeed correctly charged, as neither side has disputed, what happens on retrial if another properly instructed jury, hearing the same evidence, returns the same verdict? What about a third or a fourth jury? I also question the wisdom of following the holding in Sedillo, 153 Ariz. at 482-83, 737 P.2d at 1381-82, a case that itself is not well grounded in any authority and appears to be an anomaly in Arizona law. Finally, viewing the evidence and reasonable inferences therefrom “in the light most favorable to upholding the jury’s verdicts,” as it is incumbent on us to do, Crackel, 208 Ariz. 252, ¶ 3, 92 P.3d at 885, it requires no speculation to justify the jury’s determination and it is difficult to see how the trial court erred by refusing a new trial. The majority, however, appears to search the record and view the evidence in a light aimed at nullifying the jury’s determination.
¶ 32 Athough the majority relies on Sedillo to find Chad and Marsha must “be awarded ‘some damages,’ ” the holding of that case, as the dissenting judge pointed out, is bare of any citation of authority. See 153 Ariz. at 485, 737 P.2d at 1384 (Jacobson, J., concurring in part and dissenting in part). Thus, it is unsurprising that this twenty-year-old decision has never once been cited for its holding. Furthermore, the single case on which the Sedillo majority relied does not appear to support its result. In Quinonez, 144 Ariz. at 198, 696 P.2d at 1347, the decedent’s widower presented apparently uncontradicted expert testimony about economic loss he suffered from his wife’s death.[8] Division One of this court nevertheless upheld the jury’s award of zero damages because A.R.S. § 12-613 “reserves to the jury [the authority] to award such damages as are ‘fair and just’” and testimony about the Quinonezes’ marriage could support the jury’s conclusion that he had suffered no compensable loss “under all of the circumstances.” 144 Ariz. at 198, 696 P.2d at 1347.
¶ 33 Moreover, not only is Sedillo without support, research discloses no case, either before or after it, that has overruled a jury’s damages determination on the basis that every statutory beneficiary was entitled to some damages despite the jury’s finding to the contrary. Indeed, this court in State v. Sanchez, 119 Ariz. 64, 68, 579 P.2d 568, 572 (App.1978), stated: “We believe the intent of the legislature [in adding the word ‘shall’ to A.R.S. § 12-613] was to correct [a] deficiency *143 ... and merely authorized but did not mandate ... a jury to award such damages.”[9] If a jury is in fact mandated to award damages based on facially uncontradicted testimony, they should be so instructed.[10] Although we normally view the decisions of our sister division as persuasive and follow them, we are not bound to do so if we find compelling reasons not to or if we disagree with a decision’s underlying legal principles. In re Estate of Gordon, 207 Ariz. 401, ¶ 18, 87 P.3d 89, 93 (App.2004); Danielson v. Evans, 201 Ariz. 401, ¶ 28, 36 P.3d 749, 757 (App.2001).
¶ 34 Sedillo is unpersuasive for additional reasons. First, contrary to the majority’s conclusion, the Sedillo majority clearly relied on the fact that “each of the plaintiffs” there also suffered “possibl[e] financial losses.” 153 Ariz. at 482, 737 P.2d at 1381.[11] Second, at oral argument in this court, it was suggested that had the jury awarded damages of even $1, “we wouldn’t be here,” and the majority notes that “[njothing in Sedillo prohibits a jury from awarding nominal damages” but relies solely on Florida cases to support that conclusion. In Sedillo, however, “decedent’s minor son from a former marriage ... was awarded $5,000; and Toni, his daughter, was awarded $50,000”; the appellate court deemed both awards “extremely low,” justifying a new trial on damages. Id. at 480, 482, 737 P.2d at 1379, 1381. As noted by GABA’s counsel at oral argument, the majority’s nominal damages position merely begs the question why, absent some statutory guidance, an award of $1 would be an adequate, if demeaning, award but not zero. Lastly, Sedillo completely fails to account for, or even acknowledge, the jury’s crucial role in evaluating witnesses and evidence, particularly in a wrongful death case and even more particularly where intangible losses are claimed. See Hernandez v. State, 128 Ariz. 30, 32, 623 P.2d 819, 821 (App.1980).
¶ 35 I do not disagree with the majority’s general pronouncement that the discretion of juries is not unfettered. But it is well established “[i]t is not our prerogative to weigh the evidence and determine the credibility of witnesses; that role belongs to the [fact-finder].” Premier Fin. Servs. v. Citibank (Ariz.), 185 Ariz. 80, 85, 912 P.2d 1309, 1314 (App.1995). Indeed, a standardized preliminary jury instruction, apparently given in this case, states: “In deciding the facts of this case, you should consider what testimony to accept, and what to reject, you may accept everything a witness says, or part of it, or none of it.”[12] State Bar of Arizona, Revised Arizona Jury Instructions (Civil) Prelim. 5 (4th ed.2005). Another preliminary instruction charges juries to “decide the credibility and weight to be given to any evidence presented in the case.” Id. (emphasis added). Neither instruction contains any suggestion the jury must accept an uncontradicted statement merely because it is uncontradicted. Additionally, Instruction Five includes factors for the jury’s consideration in “evaluating testimony,” inter alia, “the quality of his/her memory; the witness’ manner while testifying; [and] whether he/she has any motive, bias or prejudice.” Id. Prelim. 5. But these factors would be superfluous if the jury were obligated to accept any statement not explicitly contradicted by another concrete piece of evidence. In addition, Instruction Five also tells the jury to “[c]onsider all of the evidence in light of reason, common sense, and experience.” These standard in *144 structions, although no longer officially sanctioned by our supreme court, see State v. Logan, 200 Ariz. 564, ¶ 12, 30 P.3d 631, 633 (2001), are routinely given to juries before any evidence is presented and generally not discussed with the lawyers or debated because they are long-standing and accepted principles. In view of today’s decision, they apparently are no longer illustrative of the law.
¶36 The majority today fashions a new, unprecedented rule of appellate review that says: “There must be support in the record, however slight, for a jury’s decision to disregard a witness’s testimony.”[13] That pronouncement, however, ignores the reality that some things may readily evade the record, things like attitude, such as hostility or insincerity; tone of voice and inflection; manner of speaking, such as hesitation or glibness; facial expression, such as excessive blinking or eye rolling; body language, such as shrugging, squirming, or perspiring; and other subtle indicators not expressed in words. This is a bedrock principle underlying appellate deference to the fact-finder, be it jury or judge. See Hutcherson v. City of Phoenix, 192 Ariz. 51, ¶ 12, 961 P.2d 449, 451 (1998) (“Our reason for deference is clear. ‘The judge sees the witnesses, hears the testimony, and has a special perspective of the relationship between the evidence and the verdict which cannot be recreated by a reviewing court from the printed record.’ ”), quoting Reeves v. Markle, 119 Ariz. 159, 163, 579 P.2d 1382, 1386 (1978); Anderson v. Nissei ASB Mach. Co., 197 Ariz. 168, ¶23, 3 P.3d 1088, 1095 (App.1999) (“Having heard the witnesses and seen the evidence, the jury was in the best position to judge which witnesses to believe____We defer to [its] determination.”).
¶ 37 The majority seeks to justify the new rule it has created by asserting that a jury may not “arbitrarily disregard a witness’s testimony — instead, [its] decision to do so must have some record support.” However, this significantly distorts our standard of review. We do not review a jury’s evaluation of the evidence for arbitrariness or capriciousness; our only role is to review the record to determine if facts, and any reasonable inference from those facts, provide support for the jury’s decision. See Salt River Project Agric. Improvement & Power Dist. v. Miller Park, L.L.C., 504 Ariz. Adv. Rep. 8, ¶ 37, 216 Ariz. 161, 164 P.3d 667, 2007 WL 1417439 (Ct.App. May 15, 2007); see also Gonzales v. City of Phoenix, 203 Ariz. 152, ¶ 2, 52 P.3d 184, 185 (2002); Flanders v. Maricopa County, 203 Ariz. 368, ¶ 5, 54 P.3d 837, 840 (App.2002); Warrington v. Tempe Elementary Sch. Dist. No. 3, 197 Ariz. 68, ¶ 4, 3 P.3d 988, 989 (App.1999). “We must not ‘take the case away from the jury’ by combing the record for evidence supporting a conclusion or inference different from that reached here.” Hutcherson v. City of Phoenix, 192 Ariz. 51, ¶ 27, 961 P.2d 449, 454 (1998), quoting Tennant v. Peoria & Pekin Union Ry. Co., 321 U.S. 29, 35, 64 S.Ct. 409, 412, 88 L.Ed. 520 (1944); see also Standard Chartered PLC v. Price Waterhouse, 190 Ariz. 6, 39, 945 P.2d 317, 350 (App.1996) (“[A] reviewing court ‘must search for a reasonable way to read the verdicts as expressing a coherent view of the case, and must exhaust this effort before it is free to disregard the jury’s verdicts and remand the case for a new trial.’ ”), quoting Toner v. Lederle Lab., 828 F.2d 510, 512 (9th Cir.1987). From the evidence presented in this case, the jury could reasonably have found that the only compensable loss proven was Elaine’s.
¶ 38 If “slight” evidence must now appear in the record to justify a jury’s decision to discount testimony, there was far more than that here from which the jury could have inferred that only Elaine, and not the children, suffered a significant loss. Both children had little to say about their personal *145 loss, but spoke freely about the effect of their father’s death on Elaine. Elaine did not mention any effect on the children that she had noticed from the loss of their father. The jury was presumably aware, through “common sense” and “experience,” that a death may result in sadness and grief, but does not necessarily have a profound or the same impact on different persons’ lives. Revised Arizona Jury Instructions, swpra, Prelim. 5. The jury could also have drawn permissible inferences from the children’s demeanor and indisposition to speak under oath about the magnitude of their loss and found that the somewhat minimal nature of their testimony was a more accurate barometer of their claims.
¶ 39 Additionally, it could have appeared to the jury that some of the testimony suggested the children’s losses were limited to mere annoyance and inconvenience from the claimed new responsibility for the care of their mother. Marsha testified about how difficult her life was after she had to assume caring for Elaine and about everything she had to do for her. But Elaine testified John had been gone for a week on a bicycle trip only one week before his death, and he had gone out and ridden his bicycle every evening and weekend. She did not indicate or suggest that the children had been required to care for her when John was away on long-distance rides. Elaine also testified that John intended, at retirement, to ride a bicycle across country while she followed him in a vehicle. Thus, this testimony could readily have raised doubts in jurors’ minds and enervates the majority’s assertion that nothing in the record suggests the testimony was inconsistent or contradicted “in any way.”
¶40 Counsel for the family stressed in closing argument that the plaintiffs “have the burden of proof with regard to the damages” and asked the jury to award “the damages proved by the evidence to your satisfaction.” Indeed, this has always been the law in regard to damages. See Wilmot v. Wilmot, 203 Ariz. 565, ¶ 22, 58 P.3d 507, 513 (2002) (wrongful death verdict is the sum of damages for each beneficiary who asserts and establishes harm); Nunez v. Nunez, 25 Ariz. App. 558, 562, 545 P.2d 69, 73 (1976), (“ ‘[Apportionment [of damages for wrongful death] is for the jury to return. This will, of course, exclude any recovery in behalf of such as show no ... loss.’ ”), quoting Gulf, Colo. & Santa Fe Ry. Co. v. McGinnis, 228 U.S. 173, 176, 33 S.Ct. 426, 427, 57 L.Ed. 785 (1913). Counsel also stated, “This is not a case in which ... the law allows for sympathy,” and emphasized that “each loss is unique” while explaining Chad and Marsha “didn’t want to have to talk about [their] loss.”[14] Thus, there were abundant grounds upon which the jury, while apportioning the damages resulting from John’s death among Elaine, Chad, and Marsha, could have determined only Elaine had carried her burden of proof of showing a compensable loss. See Wilmot, 203 Ariz. 565, ¶ 22, 58 P.3d at 513, Nunez, 25 Ariz.App. at 562, 545 P.2d at 73. Significantly, the trial court too heard the evidence and declined to set aside the jury’s verdict or grant a new trial.
¶ 41 The majority emphasizes GABA’s decision not to discredit or minimize the witnesses, but that may well have been an appropriate defense strategy, given the children’s testimony and the well-established principle that a trier of fact is not bound to accept the uncontradicted testimony of an interested witness. See Estate of Reinen v. N. Ariz. Orthopedics, Ltd., 198 Ariz. 283, ¶ 12, 9 P.3d 314, 318 (2000) (jury not compelled to believe uncontradicted evidence of interested party); Nystrom v. Mass. Cas. Ins. Co., 148 Ariz. 208, 214, 713 P.2d 1266, 1272 (App.1986) (trier of fact need not accept uncontradicted testimony from interested witnesses); see also Premier Fin., 185 Ariz. at 86, 912 P.2d at 1315 (fact-finder “is not bound to accept even the uncontradicted evidence of a disinterested party,” to say nothing of interested ones). The majority states it does not disagree with “that sensible rule” but then essentially disregards it by isolating qualifying factors in each of these cases to support the new rule it has created. But jurors are not instructed they may question the testimony of witnesses only if other evidence permits them to; indeed, such a rule improperly con *146 strains, if not abrogates, the heart of the jury’s discretion and function. See Logerquist v. McVey, 196 Ariz. 470, ¶ 51, 1 P.3d 113, 130 (2000) (“[o]ur constitution preserves the ‘right to have the jury pass upon questions of fact by determining the credibility of witnesses and the weight of conflicting evidence’ ”), quoting Burton v. Valentine, 60 Ariz. 518, 529, 141 P.2d 847, 851 (1943). “It is the jury’s function to determine accuracy, weight, or credibility” of evidence. Id. ¶ 52. “Reduction or obliteration of the jury function may be seen by some as the ultimate tort reform, but it is one prohibited by our organic law.” Id. ¶ 51.
¶ 42 Lastly, I do not suggest a jury should be permitted to disregard evidence “regardless of whether there is some reason to do so,” as the majority contends. Here, the jury was only free to discredit or discount testimony based upon all of the evidence, which included its assessment of each witness’s testimony in light of the other testimony in the case and the jury’s collective common sense and experience, as it was properly instructed in accordance with the law, at least the law the trial court was entitled to rely on before today’s decision. See Anderson, 197 Ariz. 168, ¶ 23, 3 P.3d at 1095; Premier Fin., 185 Ariz. at 80, 912 P.2d at 1314.
¶ 43 In sum, under Arizona’s wrongful death statute, the jury was authorized to award whatever damages it “deem[ed] fair and just,” § 12-613, and to distribute that award to the statutory beneficiaries “in proportion to their damages,” § 12-612(C). As the majority hollowly acknowledges, determining noneconomic, intangible losses related to the death of a family member “is peculiarly the jury’s function.” Hernandez, 128 Ariz. at 32, 623 P.2d at 819. I would find the trial court properly followed and applied that fundamental principle of our jurisprudence here.

. The majority stretches the scant facts described in Quinonez when it suggests the mere reference to the children apparently being in the care of a relative at the time of trial refuted expert economic evidence on the loss of the wife. Further, although the majority notes the wife had stated she was planning to divorce her husband, it is equally notable she was killed "on her way to bail [him] out of jail.” 144 Ariz. at 198, 696 P.2d at 1347.

. The statute as amended reads in pertinent part: ‘‘[T]he jury shall give such damages as it deems fair and just with reference to the injury resulting from the death to the surviving parties who may be entitled to recover.” A.R.S. § 12-613 (emphasis added).

. Had the jury been so instructed, it might well have awarded Marsha and Chad nominal damages as favored by the majority. However, they were not so charged, and it appears neither party ever requested such an instruction.

. The Sedillo court also expressed concern that “the jury may have improperly considered comparative negligence principles when it determined the awards” because "the jury might have believed that the statutory beneficiaries were entitled to reduced recoveries because of the testimony regarding Nancy Sedillo’s possible driving above the speed limit and her .08 blood alcohol level two hours after the accident.” 153 Ariz. at 482, 737 P.2d at 1381. There is no analogous evidence here.

. GABA’s counsel noted at oral argument, without contradiction, that the jury was specifically instructed to this effect.

. The majority cites three Industrial Commission cases in support of its contention that the record must contain evidence to explain a jury’s apparent disregard of a witness’s testimony. However, the entire statutory scheme that provides workers’ compensation is designed to be interpreted liberally to protect injured claimants. See Hypl v. Indus. Comm'n, 210 Ariz. 381, ¶ 18, 111 P.3d 423, 429 (App.2005) (workers’ compensation policy construes the law liberally to employees’ benefit); Self v. Indus. Comm’n, 192 Ariz. 399, ¶ 6, 966 P.2d 1003, 1005 (App.1998). Until today’s decision, I find no authority requiring that testimony in a wrongful death action be subject to similarly liberal treatment to ensure compensation for all parties seeking damages.

. GABA's counsel did not mention damages in his closing argument.