3 P.3d 988

Andrew C. WARRINGTON, a minor, by his next friend and natural father, Steven M. Warrington; Steven M. Warrington and Jennie J. Warrington, husband and wife, Plaintiffs–Appellees,

v.

TEMPE ELEMENTARY SCHOOL DISTRICT NO. 3, Defendant–Appellant.

No. 1 CA–CV 98–0537.

Court of Appeals of Arizona, Division 1, Department C.

Sept. 16, 1999.

Review Denied March 14, 2000.

Jardine, Baker, Hickman & Houston by Bradley R. Jardine, Phoenix, for Defendant–Appellant.

Cunningham Law Firm by James P. Cunningham, Phoenix, for Plaintiffs–Appellees.

Thomas W. Pickrell, Esq., Phoenix, for Amicus.

## OPINION

GARBARINO, Judge.

¶ 1 Tempe Elementary School District No. 3 (the District) appeals the jury verdict apportioning fault to it and awarding $900,000 to Andrew, Steven, and Jennie Warrington (the Warringtons). It also appeals the trial court's denial of its motion for a new trial or judgment notwithstanding the verdict.

¶ 2 The District contends that, as a matter of law, when a school district has established a bus stop in conformity with its rules and regulations, and has safely discharged its students at that location, its duty to its students has ended. The Warringtons contend that the District had a duty not only to select a safe location for the bus stop, but also to refrain from subjecting young school children to a foreseeable risk of harm from traffic as they negotiate their way home.

¶ 3 The issues are as follows: (1) whether the District owes a duty to the children it is bussing to situate bus stops so as to minimize the known dangers to the children from outside sources and from themselves; (2) whether the jury's finding that the District breached its duty is supported by the evidence; and (3) whether the jury's finding that the District's breach of its duty proximately caused Andrew Warrington's injuries is supported by the evidence. We find that a duty exists and that substantial evidence supports the verdict. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

¶ 4 In reviewing a jury verdict, we view the evidence in the light most favorable to sustaining the verdict. *See McFarlin v. Hall*, 127 Ariz. 220, 224, 619 P.2d 729, 733 (1980). We will affirm the verdict if there is substantial evidence to support it. *See id.* Here, there was sufficient evidence presented from which a jury could find that the District breached its duty to protect Andrew from a foreseeable risk of harm.

¶ 5 The evidence, when viewed in the light most favorable to Andrew and his parents, reflects that after school, seven-year-old Andrew got off the school bus with his friend, Steven, at the bus stop near the intersection of 41st Street and Southern Avenue. As they began to walk to Steven's house, Michael, a boy who had earlier threatened to beat up Andrew, began to chase Andrew. Believing that he was going to be beaten up, Andrew ran off the sidewalk, across a frontage road, and onto Southern Avenue. He was struck by a car and suffered severe and permanent brain and spinal injuries.

¶ 6 Andrew's parents sued the District claiming that the District negligently placed the bus stop in a location that subjected children to a foreseeable and unreasonable risk of harm as they walked to their homes. The District moved for summary judgment on the ground that it was immune from suit, and the trial court granted the motion. The Warringtons appealed and the grant of summary judgment was reversed. *See Warrington v. Tempe Elementary Sch. Dist. No. 3*, 187 Ariz. 249, 253, 928 P.2d 673, 677 (App.), *review denied* (1996) (*Warrington I* ).

¶ 7 After remand, the case proceeded to trial. The jury found that the Warringtons had suffered $6,000,000 in damages and allocated forty-five percent of the fault to Andrew, forty percent of the fault to his parents, and fifteen percent of the fault to the District. The trial court entered judgment against the District for $900,000. The District filed a motion for a new trial and a

motion for judgment notwithstanding the verdict, both of which the trial court denied. The District timely appealed the verdict and the denial of its post-verdict motions.

## DISCUSSION

### I. *Existence of a Duty*

■ ¶ 8 Whether the District had a duty of care to Andrew is a question of law that we review *de novo. See Orth v. Cole,* 191 Ariz. 291, 292, 955 P.2d 47, 48 (App.1998).

■ ¶ 9 This Court determined in *Warrington I* that the District owes a duty, when locating a bus stop, to refrain from subjecting its students to any foreseeable and unreasonable risk of harm. *See* 187 Ariz. at 253, 928 P.2d at 677; *Brooks v. Woods,* 640 P.2d 1000, 1002 (Okla.App.1981) (noting that a school district owes a duty to place a bus stop in a reasonably safe place because the physical location of the stop is outside the parents' control); *Posteher v. Pana Community Unit Sch. Dist. No. 8,* 96 Ill.App.3d 709, 52 Ill.Dec. 186, 421 N.E.2d 1049, 1052 (1981) (stating that a school district "may not select routes or pickup points that needlessly expose the pupils to any serious hazards to safety exceeding those that normally attend school bus operations").

### II. *Breach of Duty*

■ ¶ 10 As to the breach issue, if substantial evidence supports the jury's finding that the District breached its duty to Andrew, we will affirm. *See McFarlin,* 127 Ariz. at 224, 619 P.2d at 733; *Styles v. Ceranski,* 185 Ariz. 448, 450, 916 P.2d 1164, 1166 (App.1996); *Hutcherson v. City of Phoenix,* 192 Ariz. 51, 53, 961 P.2d 449, 451 (1998). We conclude that there was substantial evidence to support the jury's finding that the District breached its duty to protect Andrew from a foreseeable risk of unreasonable harm by failing to place a bus stop in a reasonably safe location. As support for this conclusion, the jury heard that the Warringtons and other concerned parents who lived in the Hidden Hollow Subdivision believed that the location of the bus stop created a dangerous situation for their children and had repeatedly requested the District to locate the bus

stop in their subdivision. There was also testimony that the District had the ability to place a bus stop in the Hidden Hollow subdivision, and that by doing so, Andrew and the other children would not have had to walk along Southern Avenue to reach their homes. There was testimony that Andrew and Steven had previously been observed running onto Southern Avenue and that the school had been notified of their behavior. However, when the caller requested the parents' telephone numbers so that they could be notified, the school advised the caller that it would take care of the matter. The school failed to notify the parents of the children's errant behavior.

¶ 11 The Warringtons also presented expert testimony to support the jury's finding that the District should reasonably have foreseen that children Andrew's age are unpredictable and might run onto a busy street. John Goss, a school bus driver trainer and consultant, testified as follows:

BY MR. CUNNINGHAM [plaintiffs' counsel]:

Q. Okay. Given the opinions that you've rendered to this point, do you think it was foreseeable to a transportation supervisor that an accident like Andrew Warrington's accident was foreseeable?

. . . .

THE WITNESS: Yes, I think it is foreseeable that an accident can happen with young children in those types of surroundings.

. . . .

Q. Tell us your reasons for that, Mr. Goss. Why do you think it was foreseeable for a transportation supervisor to have foreseen that this type of accident could have happened?

A. Southern Avenue is a very dangerous highway or street at 45 miles per hour with traffic exceeding that. And with a group of students walking together, pushing, shoving and so forth as a lot of students do, then of course it's foreseeable that there could be an accident out there.

Q. Why is that?

A. Children have a one-track mind.

Further, Herb Collier, Ph.D., a clinical psychologist, testified in part:

BY MR. CUNNINGHAM [plaintiffs' counsel]:

Q. What was your understanding, Dr. Collier, in reference to the event or the circumstances which caused Andrew to go onto Southern Avenue?

A. My understanding from reviewing the data was that he and his friend descend from the bus. There was apparently a chase. There was also some indication that he may have also been involved in a similar kind of chase with the—with Michael ... a week or two previously in which there was a statement made. In effect, he was accosted or threatened by him at that time.

There was an indication that he—after he and his friend and other children disembark[ed] from the bus at that time, most of them stayed on the sidewalk or the curb, and Michael, apparently feeling threatened, in an impulsive fashion darted into the street and was injured.

Q. You mean Andrew?

A. Andrew, I'm sorry.

Q. Okay. Do you have an opinion as to the reason why Andrew might have engaged in this conduct?

A. Well, I think there was a sense of threat. I think—I think in understanding what happens with children when they are feeling threatened, there is a cognitive message about the thought of what the damage might be. There is a physiological relax [sic] of fight and flight originally by the nervous system and adrenaline which causes them to want to act or to run.

And even children who are fairly bright and well trained about traffic safety sometimes do not search out what the alternatives are, and in his case, he apparently did search; felt he was able to beat the odds by escaping or by avoiding contact with the pursuer.

Dr. Collier also testified as follows:

Q. [By plaintiffs' counsel] This interplay that you've described where one boy would chase another boy, is that within the normal range of anticipated children's behavior?

A. Very much so. In my experience with boys in group therapy, absolutely, and my knowledge of how boys react.

Q. Would you expect then if children were commingled, you might say, at a bus stop, that you would expect as a psychologist there might be some chasing involved between the boys at that bus stop of this age range?

A. Yes.

¶ 12 We find that there was sufficient evidence from which the jury could conclude that the District breached its duty to protect Andrew from a foreseeable risk of unreasonable harm.

### III. *Proximate Cause of Andrew's Injuries*

¶ 13 In considering whether sufficient evidence was presented for the jury to find proximate cause, we again view the evidence in the light most favorable to sustaining the verdict. If any substantial evidence exists allowing reasonable people to reach this result, we will affirm. *See McFarlin,* 127 Ariz. at 224, 619 P.2d at 733; *Styles,* 185 Ariz. at 450, 916 P.2d at 1166; *Hutcherson,* 192 Ariz. at 53, 961 P.2d at 451.

¶ 14 The Warringtons' expert witnesses testified that it was foreseeable that a child Andrew's age would run onto a busy street. Even the District's transportation supervisor admitted that children run onto busy streets. "The precise nature of the accident need not be foreseeable, only the general character of the event or harm." *Constantinescu v. Conejo Valley Unified Sch. Dist.,* 16 Cal.App.4th 1466, 20 Cal. Rptr.2d 734, 739 (1993); *see also McFarlin,* 127 Ariz. at 222, 619 P.2d at 731. We find that substantial evidence supports the jury's conclusion that the District's breach proximately caused Andrew's injuries. *See Ontiveros v. Borak,* 136 Ariz. 500, 505, 667 P.2d 200, 205 (1983). The jury could have readily concluded from the testimony of the experts that the District could have easily placed a bus stop in the Hidden Hollows Subdivision. The record is replete with testimony that the parents had previously complained to the

District about the unsafe location of the bus stop. Even though they were aware of the obvious danger, those in charge of determining where the bus stop should be located elected to place the bus stop in a location requiring the children living in the Hidden Hollow Subdivision to face the traffic on Southern Avenue on a daily basis.

¶ 15 There was sufficient evidence from which a jury could conclude that a portion of the fault was Andrew's, a portion was his parents', and a portion was the District's. The evidence also supports the jury's determination that the District's negligent conduct was the proximate cause of Andrew's injuries.

¶ 16 We affirm.

CONCURRING: REBECCA WHITE BERCH, Judge, and SUSAN A. EHRLICH, Judge.