NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STEPHANIE HALLFORD-BROWN, *Plaintiff/Appellant*,

*v.*

VEOLIA TRANSPORTATION SERVICES, INC., et al.,
*Defendants/Appellees.*

No. 1 CA-CV 17-0465
FILED 10-25-2018

Appeal from the Superior Court in Maricopa County
No. CV2013-007219
The Honorable Randall H. Warner, Judge

**AFFIRMED**

COUNSEL

Phillips Law Group, P.C., Phoenix
By Timothy G. Tonkin, Nasser Usama Abujbarah
*Counsel for Plaintiff/Appellant*

Lewis Brisbois Bisgaard & Smith LLP, Phoenix
By Todd A. Rigby, Shawn M. Petri
*Counsel for Defendants/Appellees*

---

**MEMORANDUM DECISION**

Presiding Judge Jennifer B. Campbell delivered the decision of the Court, in which Judge Paul J. McMurdie and Judge Kent E. Cattani joined.

---

**C A M P B E L L**, Judge:

¶1          Stephanie Hallford-Brown timely appeals from the jury's verdict in favor of Veolia Transportation Services, Inc. and Kenneth Van Dyke (together, "the bus company"), the superior court's denial of various pretrial motions, the court's decision to quash a trial subpoena for an out-of-state witness, and the court's judgment awarding the bus company its costs and offer-of-judgment sanctions under Rule 68 of the Arizona Rules of Civil Procedure. For the reasons that follow, we affirm.

**BACKGROUND**[1]

¶2          In February 2013, Veolia employee Kenneth Van Dyke was operating a Veolia bus and waiting at a layover stop to start his scheduled route. Hallford-Brown was sitting on the bus-stop bench waiting to board until the driver was ready to depart. When Van Dyke closed the bus doors and began to pull into traffic, Hallford-Brown got up and ran toward the bus, tapping it with her hand to get Van Dyke's attention. She then fell off the curb and was run over by the bus's rear tire, suffering severe injuries to her foot and leg. Hallford-Brown filed a complaint against Veolia and Van Dyke alleging negligence, negligence per se, and negligent entrustment.

¶3          After seven days of trial, the jury returned a verdict in favor of the bus company. The bus company later filed a proposed judgment and statement of costs, including a request for sanctions pursuant to Rule 68 of the Arizona Rules of Civil Procedure because the bus company ultimately obtained a judgment more favorable than an offer of judgment Hallford-Brown had previously rejected. The court awarded the bus company a total of $42,684.83 in taxable costs and Rule 68 sanctions.

---

[1]     We view the evidence in the light most favorable to sustaining the jury's verdict. *Warrington v. Tempe Elementary Sch. Dist. No. 3*, 197 Ariz. 68, 69, ¶ 4 (App. 1999).

**DISCUSSION**

¶4        On appeal, Hallford-Brown presents six arguments: (1) The jury did not understand how to fill out the verdict forms; (2) the superior court abused its discretion by quashing an out-of-state trial subpoena of Kent Weston; (3) the superior court abused its discretion by denying Hallford-Brown's motion for jury view; (4) the superior court abused its discretion by partially denying Hallford-Brown's motion in limine regarding a subsequent car accident; (5) the superior court abused its discretion by denying Hallford-Brown's motion in limine regarding her glaucoma and left-eye blindness; (6) the superior court erred by awarding Rule 68 sanctions to the bus company. We address each argument in turn.

## I.        The record does not indicate that the jury misunderstood the verdict forms.

¶5        We view the evidence in the light most favorable to upholding the jury verdict and affirm if there is substantial evidence to support it. *Warrington v. Tempe Elementary Sch. Dist. No. 3*, 197 Ariz. 68, 69, ¶ 4 (App. 1999). "Substantial evidence is any relevant evidence from which a reasonable mind might draw a conclusion." *Mealey v. Arndt*, 206 Ariz. 218, 221, ¶ 12 (App. 2003) (citation omitted). Jurors are presumed to follow their instructions; thus, when a jury returns a verdict in favor of one party without reaching an apportionment of fault, the jury presumably determined that apportionment was not necessary or warranted. *See Ryan v. San Francisco Peaks Trucking Co., Inc.*, 228 Ariz. 42, 46, ¶ 12 n.5 (App. 2011).

¶6        Hallford-Brown argues the verdict was contrary to the weight of evidence because "the jury admitted that they believed the case was '51-49' but did not fill out the comparative negligence form," confining itself to signing the verdict form in favor of the bus company. Hallford-Brown contends that "[o]ne interpretation of this verdict is that the jury did not understand how to fill out the verdict forms." We decline to adopt this interpretation.

¶7        First, there is no evidence in the record before us that the jury felt the case was "51-49." Moreover, even had the jury collectively expressed any such statement, its meaning would be purely speculative. Furthermore, the court instructed the jury on the option to apportion comparative fault between the parties and on how to fill out the three verdict forms to correctly reflect their verdict. The jury did not exercise that option. Additionally, the jurors did not submit any questions regarding the

apportionment of comparative fault during either the trial or their deliberations, supporting a conclusion that they were not confused.

## II.    The superior court did not abuse its discretion by quashing the trial subpoena of former Veolia safety manager Kent Weston.

¶8            Prior to trial, Hallford-Brown filed a motion to issue a letter rogatory to the Circuit Court of Collier County, Florida. Rule 28 of the Arizona Rules of Civil Procedure provides for the use of letters rogatory to obtain depositions in foreign jurisdictions, but Hallford-Brown's proposed letter rogatory requested the Florida court's assistance in compelling Kent Weston, a retired Veolia safety manager, to appear and testify at the trial scheduled to take place in Arizona. Nevertheless, the superior court issued Hallford-Brown's so-called letter rogatory and the clerk of the Florida court signed the proposed subpoena. The bus company then filed a motion to quash the subpoena, arguing neither the superior court nor the Florida court had the authority to compel Weston's attendance at the Arizona trial. The superior court quashed the subpoena and, after full briefing, ruled that it lacked the authority to compel Weston to travel to Arizona to testify in the civil trial.

¶9            Hallford-Brown contends that, during trial, there was "no one available to discuss the safety zone and its relevance to the case." She argues that the superior court erred in quashing the subpoena and that Weston's testimony was essential to her case. The superior court "has broad discretion in ruling on disclosure and discovery matters," and we will not disturb those rulings absent an abuse of discretion. *Marquez v. Ortega*, 231 Ariz. 437, 441, ¶ 14 (App. 2013).

¶10           Under Arizona Rule of Civil Procedure 45(b), "[a] subpoena commanding attendance at a hearing or trial must issue from the superior court in the county where the hearing or trial is to be held." In the absence of an applicable statute, "a state court cannot require the attendance of a witness who is a non-resident of, and is absent from, the state." *Armstrong v. Hooker*, 135 Ariz. 358, 359 (App. 1982), *superseded on other grounds by* Ariz. R. Civ. P. 16(a) (1987), *as recognized in Estate of Lewis v. Lewis*, 229 Ariz. 316, 322, ¶ 15 (App. 2012); *see also State v. Owens*, 103 Ariz. 541, 543 (1968) ("[T]he determination of whether a witness is beyond the jurisdiction of the court so that his personal attendance cannot be had is a matter within the sound discretion of the trial court."); *Helge v. Druke*, 136 Ariz. 434, 437 (App. 1983) ("Subpoenas to compel the attendance of a witness may run to the boundaries of the state and a witness present at any place in the state may be compelled to attend."). Because the superior court lacked a legal basis to

compel Weston to travel from Florida to testify at trial in Arizona, it did not abuse its discretion by refusing to order Weston to do so.

¶11        Furthermore, even if the superior court had the authority to compel Weston to appear at trial from out of state, we cannot say the superior court otherwise abused its discretion by quashing the subpoena. Contrary to Hallford-Brown's assertion that "there was no one available to discuss the safety zone and its relevance to the case," multiple witnesses testified at length about the safety zone and its relevance throughout trial. Weston's deposition testimony was presented at trial describing the "safety zone" as a 15-foot perimeter around the sides, front, and rear of the bus of which operators must be aware of at all times and confirmed that the Veolia operator training manual instructed operators to continually survey the zone for hazards. Van Dyke also testified to his understanding of the safety zone and possible hazards within it at the time of the incident. Hallford-Brown's expert witness Paul Herbert testified that a 15-foot safety zone—and the expectation that a bus operator evaluate every person or other hazard within it—was a common industry standard. Herbert also confirmed that the bench on which Hallford-Brown was sitting just before the incident was within the safety zone, and that he believed Van Dyke had not been adequately trained on the concept. The bus company's expert witness David Stopper also testified about the safety zone, including his belief that Van Dyke had adequately monitored it during the incident and that Hallford-Brown was not a hazard within it.

## III.    The superior court did not abuse its discretion by denying Hallford-Brown's motion for a jury view.

¶12        Hallford-Brown requested that the jury be transported to the scene of the incident to see its layout firsthand. The question of whether to grant a jury view is a matter left within the sound discretion of the superior court. *State v. Avila*, 141 Ariz. 325, 330 (App. 1984). In exercising this discretion, the court has a duty to weigh the danger of prejudice against the probative value of the evidence. *State v. Martin*, 107 Ariz. 444, 446 (1971). "[F]or a denial of a jury view to constitute an abuse of discretion, it must appear almost to a certainty that such denial deprived the jury of material assistance in evaluating the evidence and that such deprivation was in fact prejudicial" to the party requesting the jury view. *State v. Money*, 110 Ariz. 18, 25 (1973).

¶13        Hallford-Brown contends the superior court gave no detailed rationale for its decision to deny the request for a jury view of the scene, only indicating "the potentials for problems that arise from it" as the basis

for its denial. Hallford-Brown argues that, without understanding what those potential problems may have been, she was left with only conjecture regarding the court's reasoning. We disagree.

**¶14**        Prior to its denial, the court heard arguments from both parties' lawyers, allowing Hallford-Brown's counsel to "explain to me why pictures don't do this justice." Hallford-Brown's counsel argued that the relative positions of the bus and the bus bench were central to the case and confirmed that he could charter a bus to conduct the jury view. The court expressed concerns, however, about the judge, lawyers, parties, and jurors mixing in a less formal setting outside of the courtroom. The bus company's counsel then argued that such a situation could foster inappropriate interactions and misinterpretations, noted the potential for a mistrial, and pointed out that the available in-court evidence included photographs, Google View, and the bus video footage of before, during, and after the incident. Immediately thereafter, the court ruled it was "less concerned about the time than . . . about the . . . potentials for problems that arise from it" and denied the motion. We conclude that the record makes clear the basis for the court's denial; namely, that given the available photographic and video evidence of the incident, the potential for a mistrial and confusion and misinterpretation by jurors outweighed any added value of seeing the scene in person.

**¶15**        Hallford-Brown further contends the record "make[s] it clear" the jurors did not fully comprehend the style of the bus stop because they asked to view the video on "countless occasions." Although the jury asked multiple questions related to the video throughout the trial and their deliberations—including whether they could play the video frame-by-frame, whether the video could be made larger, whether they could approach the screen to view the video more closely, whether the video had been sped up, and whether there was any video of the operator pulling into the stop—none of their questions were resolvable through an in-person jury view, and instead were indicative of the jurors' interest in the video rather than confusion over the layout of the scene. Accordingly, the superior court did not abuse its discretion by denying Hallford-Brown's motion. *See State v. Mauro*, 159 Ariz. 186, 204 (1988) (explaining that the trial court did not abuse its discretion by denying a request for a jury view because the scene might not be in the same condition as the date of the incident and the jury could get the necessary evidence through diagrams, photographs, and testimony).

**IV.   Hallford-Brown was not prejudiced by the superior court's partial denial of her motion in limine regarding a subsequent car accident.**

¶16        About three years after the bus incident but prior to trial, Hallford-Brown was involved in a car accident in which she was also injured. Before trial, she filed a motion in limine asking the superior court to preclude any evidence of that accident. The court granted the motion in part, precluding any evidence that there was a separate claim, bills, or compensation arising from that accident, but allowing evidence of the subsequent accident and Hallford-Brown's related injury for the purpose of addressing her lost wages claim.

¶17        Hallford-Brown now argues that the evidence relating to her subsequent car accident was irrelevant and prejudicial, and its introduction was a ruse by the bus company that confused the jury about the origin of her injuries. We disagree. "We will not disturb a trial court's rulings on the exclusion or admission of evidence unless a clear abuse of discretion appears and prejudice results." *Gemstar Ltd. v. Ernst & Young*, 185 Ariz. 493, 506 (1996).

¶18        Throughout the trial, multiple expert witnesses for both the plaintiffs and the bus company testified about the timeline and magnitude of Hallford-Brown's lost earning capacity, including testimony that Hallford-Brown began working full-time again sometime after the bus incident but stopped doing so after the later car accident. Her ability or inability to engage in full-time employment following both of her injuries was directly relevant to her claim of lost earnings. However, we need not decide whether the superior court abused its discretion by partially denying her motion in limine because Hallford-Brown has demonstrated no resulting prejudice.

¶19        There was no dispute during trial that the Veolia bus ran over Hallford-Brown and that she suffered serious injuries, and Hallford-Brown points to nothing in the record indicating the jury may have been confused about the origin of her injuries. Further, the superior court instructed the jury:

> [Hallford-Brown] claims [the bus company was] at fault for her injuries. [The bus company] claim[s] [Hallford-Brown] was at fault. . . . Before you can find any party at fault, you must find that party's negligence was a cause of [Hallford-Brown]'s injury. . . . There may be more than one cause of an

injury. . . . If you find [the bus company was] not at fault, then your verdict must be for [the bus company]. If you find [the bus company was] at fault, then [the bus company is] liable to [Hallford-Brown] and your verdict must be for [Hallford-Brown]. You should then determine the full amount of [Hallford-Brown]'s damages and enter that amount on the verdict form.

By returning a verdict in favor of the bus company, the jury determined as a threshold matter that the bus company was not negligent during the earlier bus incident. Because the jury awarded nothing to Hallford-Brown and therefore never made any determination relating to her damages for lost earnings, Hallford-Brown suffered no prejudice from the admission of evidence relating to the later car accident.

## V.      The superior court did not abuse its discretion by denying Hallford-Brown's motion in limine regarding her glaucoma and left-eye blindness.

¶20         Before trial, Hallford-Brown filed a motion in limine asking the superior court to preclude any evidence of her glaucoma and left-eye blindness as irrelevant and prejudicial, which the court denied. During trial, Hallford-Brown testified that she was permanently blind in her left eye. The bus company then questioned Hallford-Brown regarding the condition:

> Q: . . . [N]ow the bus is moving and you're running toward it still. I believe you mentioned yesterday that you're blind in your left eye?
>
> A: Correct. I am.
>
> Q: Okay. And that's from a glaucoma condition?
>
> A: Correct.
>
> Q: That's a condition you've had since you were a teenager?
>
> A: Yes.
>
> Q: . . . So . . . the left side of you is facing the bus as you're running toward it?
>
> A: Correct.

During closing, the bus company argued:

> And when she's running by [the bus], she's running along her left side. And we know about the glaucoma, we know about the left eye blindness. She is running blind. Right next to the curb, right next to a moving bus that's pulling away, starting to lose her balance, juggling all this, reaches out for the bus . . . and [loses] her balance and she's off the curb . . . .

**¶21** Hallford-Brown refers to statements allegedly made by jurors but not in the record, claiming the jurors "indicated that a large reason they ruled for [the bus company] was that they could not get over a woman 'with glaucoma' running after a bus." Hallford-Brown argues the evidence relating to her glaucoma was "not relevant and was so prejudicial that it gave her no opportunity for a fair trial," and that the bus company should have requested a medical exam under Arizona Rule of Civil Procedure 35. Reviewing the superior court's denial of her motion in limine for an abuse of discretion, *Warner v. Southwest Desert Images, LLC*, 218 Ariz. 121, 133, ¶ 33 (App. 2008), we disagree.

**¶22** First, contrary to Hallford-Brown's assertion, Arizona Rule of Civil Procedure 35 did not require the bus company to offer expert testimony or request a court-ordered exam about Hallford-Brown's left-eye blindness; rather, the Rule allows the court to order a party whose physical condition is in controversy to submit to an exam. Ariz. R. Civ. P. 35(a)(1). Here, the fact that Hallford-Brown was permanently blind in her left eye was not in controversy: Hallford-Brown admitted she suffered from this condition.

**¶23** Further, "[t]he function of an expert witness is to provide testimony on subjects that are beyond the common sense, experience and education of the average juror." *Adams v. Amore*, 182 Ariz. 253, 255 (App. 1994) (citation omitted); *see, e.g., Hunter Contracting Co., Inc. v. Superior Court*, 190 Ariz. 318, 320-21 (App. 1997) ("Expert testimony is necessary to prove professional negligence when question to be determined is strictly within the special and technical knowledge of the profession and not within the knowledge of the average layman.") (citation omitted); *Riedisser v. Nelson*, 111 Ariz. 542, 544 (1975) ("Negligence on the part of a physician must be established by expert medical testimony unless the negligence is so grossly apparent that a layman would have no difficulty in recognizing it.") (citation omitted).

¶24 Here, Hallford-Brown failed to demonstrate that the reasonableness and comparative fault of a half-blind person running toward a moving bus was beyond the common sense, experience, and education of an average juror, nor that the evidence of her left-eye blindness was irrelevant. On the contrary, her left-eye blindness was directly relevant to the reasonableness of her own actions and how the incident occurred: "The conduct of an actor with a physical disability is negligent only if the conduct does not conform to that of a reasonably careful person with the same disability." Restatement (Third) of Torts § 11(a). "[P]ersons with particular disabilities can appreciate that some conduct on their party will foreseeably entail a greater risk than the same conduct engaged in by able-bodied persons. . . . For example, it is considerably more dangerous for a blind person to walk over unfamiliar terrain than for a person free of disability." Restatement (Third) of Torts § 11 cmt. b. Accordingly, the superior court did not abuse its discretion by denying Hallford-Brown's motion in limine regarding her glaucoma and left-eye blindness.

**VI.     The superior court did not abuse its discretion in awarding costs to the bus company.**

¶25 Prior to trial, the bus company served Hallford-Brown with an offer of judgment, which Hallford-Brown rejected. *See* Ariz. R. Civ. P. 68(c), (d). Following the jury verdict, the bus company submitted a statement of costs totaling $53,250.83, claiming it was entitled to not only its taxable costs pursuant to Arizona Revised Statutes § 12-341, but also its reasonable expert witness fees and double its post-offer taxable costs pursuant to Rule 68(g). Hallford-Brown objected to the bus company's statement of costs on various grounds, arguing the award should be reduced to a total of $38,915.22. In reply, the bus company accepted all of Hallford-Brown's proposed reductions except one, and the superior court accordingly awarded a total of $42,684.83.

¶26 The only objection raised by Hallford-Brown in her response and not adopted by the bus company in its reply relate to the expert witness fees associated with David Stopper. Because Hallford-Brown requested an amount of $38,915.22 and the court awarded $42,684.83, it now appears Hallford-Brown is specifically appealing the $3,769.61 in Mr. Stopper's travel-related expenses. Hallford-Brown concedes that Rule 68 allows the court to award the bus company the reasonable travel expenses of its expert witnesses, but contends the figure charged by Mr. Stopper was unreasonable. She argues the bus company did not need to bring in an out-of-state expert when a local expert could have provided equivalent testimony, but she provides no supporting authority or evidence. We

review the superior court's decision to impose sanctions of reasonable expert witness fees under Rule 68 for an abuse of discretion. *Stafford v. Burns*, 241 Ariz. 474, 484, ¶ 38 (App. 2017). Because Mr. Stopper's travel-related expenses do not seem inherently unreasonable and the bus company was under no obligation to procure an in-state expert, we discern no such abuse here.

## CONCLUSION

**¶27**      For the foregoing reasons, we affirm. As the prevailing party on appeal, we award Veolia and Van Dyke their costs on appeal upon compliance with Arizona Rule of Civil Appellate Procedure 21.

