IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

GARY THOMAS BENEDICT, SR., et al., *Plaintiffs/Appellees*,

*v.*

TOTAL TRANSIT INC., et al., *Defendants/Appellants*.

No. 1 CA-CV 20-0002
FILE 9-9-2021

Appeal from the Superior Court in Maricopa County
No. CV2016-052071

The Honorable Theodore Campagnolo, Judge

**AFFIRMED**

COUNSEL

Goldberg & Osborne, L.L.P., Phoenix
By Allen D. Bucknell
*Counsel for Plaintiff/Appellee Benedict*

Ahwatukee Legal Office, P.C., Phoenix
By David L. Abney
*Counsel for Plaintiff/Appellee Hoff*

Law Offices of C. Douglas Weber, Mesa
By C. Douglas Weber
*Co-Counsel for Plaintiff/Appellee Hoff*

Elardo, Bragg, Rossi & Palumbo, P.C., Phoenix
By John A. Elardo, Michael E. Palumbo, Katherine A. Stewart
*Counsel for Defendants/Appellants*

—————————————

**OPINION**

Judge D. Steven Williams delivered the opinion of the Court, in which Presiding Judge Samuel A. Thumma and Judge David D. Weinzweig joined.

—————————————

**W I L L I A M S**, Judge:

¶1   A cabdriver struck two pedestrians crossing a major Phoenix street one night in the middle of a block. One of the pedestrians died; the other was severely injured. In this appeal, we affirm jury verdicts in favor of the decedent's daughters and the injured pedestrian.

## FACTUAL AND PROCEDURAL HISTORY

¶2   Joshua Tejada was driving a leased taxi for Total Transit, Inc., d/b/a Discount Cab ("Discount Cab"). He struck Gary Thomas Benedict, II and Stephanie Hoff, who were crossing Thunderbird Road together without the benefit of a crosswalk or traffic light. Only moments before impact, Tejada glanced at his phone and dispatch monitor, looking for his next fare's contact information. Benedict died from injuries incurred in the collision; Hoff was injured but survived.

¶3   Benedict's father filed a wrongful death lawsuit against Tejada and Discount Cab on behalf of himself and Benedict's two minor daughters. The complaint alleged Tejada negligently caused Benedict's death and, under the doctrine of *respondeat superior*, imputed Tejada's negligence to Discount Cab. When Benedict's father died before trial, Lisa Benedict, Benedict's ex-wife and mother of Benedict's daughters, continued the suit on behalf of the two girls.

¶4   Meanwhile, Hoff's father, acting as Hoff's guardian and conservator, filed a separate action against Tejada and Discount Cab. The superior court consolidated the cases.

¶5   At trial, at various times, Tejada and Discount Cab (together, "Appellants") moved for judgment as a matter of law. The court denied each motion. The jury ultimately reached two verdicts. The first found in Hoff's favor, awarding her $2,000,000 in damages and allocating fault as follows: Tejada 40%, Benedict 0%, and Hoff 60%. Six jurors (Nos. 1, 2, 3, 4, 9, and 10) joined in the verdict. The second verdict found for Benedict's

daughters, awarding each $91,000 in damages and allocating fault as follows: Tejada 30%, Benedict 70%, and Hoff 0%. A different combination of six jurors (Nos. 1, 2, 4, 8, 9, and 10) joined in the second verdict. Appellants filed a motion seeking judgment as a matter of law, arguing the verdicts were "inconsistent." The court denied the motion, along with their later motion for a new trial.

¶6          This timely appeal followed. We have jurisdiction under Article 6, Section 9, of the Arizona Constitution and A.R.S. §§ 12-2101(A)(1) and 12-2101(A)(5)(a).

## DISCUSSION

I.    *Lisa Benedict, as Mother of Benedict's Minor Daughters, Had Authority to Sue on Her Daughters' Behalf*

¶7          Appellants contend the superior court erred when it allowed Lisa Benedict to maintain this action for wrongful death on her daughters' behalf. Appellants argue that under A.R.S. § 12-612(A), only the personal representative of Benedict's estate could sue on behalf of the daughters.

¶8          We review questions of statutory construction de novo. *Knauss v. DND Neffson Co.*, 192 Ariz. 192, 199 (App. 1997). In interpreting a statute, our goal is to discern the legislature's intent. *Id.* Accordingly, we "look first to the statute's words," *id.* (quoting *In re Denton*, 190 Ariz. 152, 155 (1997)), and "adhere to the plain language of the statute, leaving any deficiencies or inequities to be corrected by the legislature," *Bowslaugh v. Bowslaugh*, 126 Ariz. 517, 519 (1979).

¶9          "The right of action for wrongful death is purely statutory and the action must be brought in the names of the persons to whom the right is given by statute." *Solomon v. Harman*, 107 Ariz. 426, 428 (1971). Section 12-612(A) requires that an action for wrongful death be brought by a designated plaintiff (the decedent's "surviving husband or wife, child, parent or guardian, or personal representative"), for and on behalf of a statutory beneficiary (the decedent's "surviving husband or wife, children or parents, or if none of these survive, on behalf of the decedent's estate").

¶10         Appellants concede Benedict's daughters are proper statutory beneficiaries under § 12-612(A). They assert, however, that under § 12-612(A), a minor child may only bring a wrongful death action through the personal representative of the decedent's estate. While we agree with Appellants that "a minor is never allowed to bring an action in [her] own name but must always sue through a representative whatever the cause of

action," *Porter v. Triad of Ariz. (L.P.)*, 203 Ariz. 230, 233, ¶ 11 (App. 2002), we reject their contention that § 12-612(A) requires a minor child to sue through the personal representative of the decedent's estate. The plain language of the statute requires no such thing. *See Bowslaugh*, 126 Ariz. at 519.

¶11 Section 12-612(A) designates a decedent's child as a statutory plaintiff *and* a statutory beneficiary. As both a statutory plaintiff and a statutory beneficiary, a decedent's child may bring an action for wrongful death and receive the proceeds. *Wilmot v. Wilmot*, 203 Ariz. 565, 569, ¶ 13 (2002) (noting that in most cases, the statutory plaintiff "is the surviving spouse or child and is also a beneficiary," capable of both litigating the action and receiving the proceeds). Section 12-612(A) does not distinguish between the rights of adult children and minor children, and nothing in the language of the statute suggests that either must sue through the personal representative of the decedent. *See Edonna v. Heckman*, 227 Ariz. 108, 110, ¶ 12 (App. 2011) (recognizing that adult children may bring an action for wrongful death). Accordingly, we decline to adopt the requirement Appellants request and instead hold that, under § 12-612(A), a minor child need not bring a wrongful death action through the personal representative of the decedent, but instead may sue through another appropriate representative.

¶12 Here, Benedict's minor daughters' claim was made through an appropriate representative (their mother) who brought and pursued the claim in their names. The superior court did not err in hearing their claim.

## II.    *Admissibility of Dr. Frey's Testimony*

¶13 Appellants also contend the court erred when it permitted Hoff's neurology expert, Dr. Lewis Frey, to testify to the cause of Hoff's injuries and to the reasonableness of medical charges she incurred after the collision. We review challenges to the superior court's admission or exclusion of evidence for an abuse of discretion resulting in prejudice. *Cervantes v. Rijlaarsdam*, 190 Ariz. 396, 398 (App. 1997). "We review the superior court's denial of a motion for judgment as a matter of law de novo, viewing the evidence in the light most favorable to the non-moving party." *Desert Mountain Props. Ltd. P'ship v. Liberty Mut. Fire Ins. Co.*, 225 Ariz. 194, 200, ¶ 12 (App. 2010), *aff'd*, 226 Ariz. 419 (2011).

¶14 As the trial approached, Dr. Frey informed the parties that a scheduling conflict precluded him from appearing in person at trial. And although Hoff had timely disclosed Dr. Frey as one of her medical experts,

Appellants had not deposed him or any of Hoff and Benedict's other expert witnesses. Consequently, Dr. Frey's testimony was taken by video deposition two weeks before trial. Following Dr. Frey's deposition, Appellants moved to restrict his trial testimony, arguing that because Hoff had not properly disclosed the full scope of his testimony, the court should exclude it under Rule 37(c)(1) of the Arizona Rules of Civil Procedure. Rule 37(c)(1) provides:

> Unless the court specifically finds that such failure caused no prejudice or orders otherwise for good cause, a party who fails to timely disclose information, a witness, or a document required by Rule 26.1 may not use the information, witness, or document as evidence at trial, at a hearing, or with respect to a motion.

¶15 "The object of disclosure, as with all discovery, is to permit the opponent a reasonable opportunity to prepare for trial or settlement-nothing more, nothing less." *Bryan v. Riddel*, 178 Ariz. 472, 476 n.5 (1994). The "trial court has broad discretion in determining whether evidence has been properly disclosed and whether it should be admitted at trial," and that decision "will not be disturbed on appeal absent an abuse of discretion." *Solimeno v. Yonan*, 224 Ariz. 74, 77, ¶ 9 (App. 2010). In addressing a discovery dispute, "[t]he question is not whether the judges of this court would have made an original like ruling, but whether a judicial mind, in view of the law and circumstances, could have made the ruling without exceeding the bounds of reason." *Marquez v. Ortega*, 231 Ariz. 437, 441, ¶ 14 (App. 2013) (quoting *Associated Indem. Corp. v. Warner*, 143 Ariz. 567, 571 (1985)).

¶16 Before trial, Hoff had disclosed an affidavit by Dr. Frey and three disclosure statements recounting that Dr. Frey would opine that Hoff sustained permanent injuries as a result of the collision. In his deposition, Dr. Frey testified that as a result of the collision, "[Hoff] incurred brain damage that she didn't have before." Appellants contend Dr. Frey went on to testify at length about causation even though he had not been disclosed as a causation expert. Dr. Frey's testimony, however, was not inconsistent with his affidavit. And although Dr. Frey's testimony may have expounded upon Hoff's disclosure statements, Appellants had a reasonable chance to defend against Dr. Frey's testimony and to supplement the opinions of their own witnesses in response to Dr. Frey's deposition testimony. The court's determination that Dr. Frey's testimony was adequately disclosed and that any failure to disclose was nonprejudicial did not "exceed[] the bounds of

reason." *Associated Indem. Corp.*, 143 Ariz. at 571. The court accordingly did not err in allowing Dr. Frey's causation testimony to be admitted at trial.

¶17        Dr. Frey also testified that Hoff's medical charges were reasonable. Appellants contend the court erred by allowing this testimony because Dr. Frey had not been disclosed as an expert on medical bills. Of note, the reasonableness of Hoff's medical charges was not listed as a contested issue in the joint pretrial statement, and Appellants disclosed no witness to testify on that issue. Given that Appellants did not timely challenge the reasonableness of the charges, the court did not abuse its discretion in denying Appellants' motion to preclude Dr. Frey from offering the testimony.

¶18        Appellants rely on *Larsen v. Decker*, 196 Ariz. 239 (App. 2000), to support their contention that Hoff was required to offer "expert evidence" to establish that her medical bills were reasonable. *Larsen*, however, merely holds that a plaintiff may not rely solely on medical records and bills to establish the reasonableness of medical expenses; instead, this court noted, the plaintiff must offer "other evidence" that the expenses were reasonable. *Id.* at 243–44, ¶ 20 (citing *Patterson v. Horton*, 929 P.2d 1125, 1130 (Wash. App. 1997)). Dr. Frey's testimony constituted that "other evidence" in this case. And although Dr. Frey testified he did not handle medical billing directly, he also stated he was aware of amounts billed for various procedures and treatments. How much weight to give Dr. Frey's testimony, including whether to disregard it altogether, was within the jury's discretion. *See State v. Clemons*, 110 Ariz. 555, 556–57 (1974) ("No rule is better established than that the credibility of the witnesses and the weight and value to be given to their testimony are questions exclusively for the jury."). Appellants cross-examined Dr. Frey at length about the basis for his testimony. Accordingly, the court did not abuse its discretion in admitting this testimony given that Appellants had "a reasonable opportunity to prepare for trial." *Bryan*, 178 Ariz. at 476 n.5. Similarly, the court did not err in denying Appellants' motion for a directed verdict or motion for a new trial for failure to offer competent evidence that Hoff's medical expenses were reasonable.

### III.    *Jury Instructions*

¶19        Appellants argue the superior court erred by instructing the jury on *respondeat superior* based on agency principles. They contend the jury should have been instructed it could find the corporate defendants liable only if Hoff and Benedict proved Tejada was a Discount Cab employee. "[W]hen a party challenges a trial court's jury instruction,

reversal is justified only if the instruction was both erroneous *and* 'prejudicial to the substantial rights of the appealing party.'" *Gemstar Ltd. v. Ernst & Young*, 185 Ariz. 493, 504 (1996) (emphasis added) (quoting *Walters v. First Fed. Sav. & Loan Ass'n*, 131 Ariz. 321, 326 (1982)). "In reviewing jury instructions, we 'determine whether the trial court gave the jury the proper rules of law to apply in arriving at its decision. Absent substantial doubt whether the jury was properly guided in its deliberations, we will not overturn a jury verdict because of jury instructions.'" *Higgins v. Assmann Elecs., Inc.*, 217 Ariz. 289, 294, ¶ 15 (App. 2007) (quoting *Crackel v. Allstate Ins. Co.*, 208 Ariz. 252, 270–71, ¶ 68 (App. 2004)).

¶20 Here, the jury was instructed it could find Tejada was Discount Cab's agent for purposes of *respondeat superior* if the plaintiffs showed Tejada had either actual authority or apparent authority to act on Discount Cab's behalf. Appellants argue the instruction was improper because there was no evidence that Tejada had actual or apparent authority.

¶21 As the court instructed the jury, actual authority may be proven by direct evidence of an express contract of agency between the principal and agent or by facts implying the existence of such contract. *Ruesga v. Kindred Nursing Ctrs., L.L.C.*, 215 Ariz. 589, 597, ¶ 29 (App. 2007). By contrast, apparent authority arises when "the principal has intentionally or inadvertently induced third persons to believe that such a person was his agent although no actual or express authority was conferred on him as agent." *Reed v. Gershweir*, 160 Ariz. 203, 205 (App. 1989).

¶22 Here, the superior court's instruction on actual authority was supported by the evidence. Although Discount Cab denied the existence of an agency relationship, Tejada drove a vehicle conspicuously displaying Discount Cab's logo and phone number and used communication equipment Discount Cab installed in the vehicle to communicate with and to receive fares from Discount Cab. These facts could imply an intention to create an agency relationship. *See Ruesga*, 215 Ariz. at 598, ¶ 32 (noting that an agency relationship may be implied from the words and conduct of the parties notwithstanding a denial by the alleged principal). On this record, the court did not err by properly instructing the jury on the principles of actual authority.

¶23 The jury instruction on apparent authority, however, was unsupported by the record. That instruction told the jury it could find apparent authority if it concluded that Discount Cab took action to cause Hoff or Benedict to believe Tejada was Discount Cab's agent, that Hoff and

Benedict relied on that representation to their detriment, and that their reliance was reasonably justified.

¶24 No trial evidence showed that Hoff or Benedict relied on the apparent authority of Tejada when they chose to cross the road mid-block. Regardless, given the ample evidence to support actual authority, it is so unlikely that a jury could have found for the plaintiffs based on apparent authority, but not on actual authority, that Appellants have shown no prejudice from the error. *See Gemstar*, 185 Ariz. at 504 (noting that reversal is justified only if the instruction was both erroneous and prejudicial). "We will affirm jury instructions if, taken as a whole, they provide the jury with the correct rules for reaching its decision." *Lifeflite Med. Air Transp., Inc. v. Native Am. Air Servs., Inc.*, 198 Ariz. 149, 151, ¶ 8 (App. 2000). Here, the jury instructions, taken as a whole, provided the jury with the correct rules for reaching its decision. We will not reverse the jury's verdict.

¶25 Finally, Appellants argue the superior court erred by refusing to give a jury instruction on employment. As noted, we will not reverse a verdict based on a purported error in the jury instructions absent resulting prejudice. *See Gemstar*, 185 at 504; *see Dupray v. JAI Dining Servs. (Phx.), Inc.*, 245 Ariz. 578, 585, ¶ 22 (App. 2018). Appellants have shown no resulting prejudice from the court's refusal and have failed to articulate how a jury instruction on employment, rather than agency, would have changed the outcome of the verdict. *See Tarron v. Bowen Mach. & Fabricating, Inc.*, 225 Ariz. 147, 150, ¶ 9 (2010) ("The doctrine of respondeat superior generally holds an employer vicariously liable for the negligent work-related actions of its employees."). The court did not err because agency liability was an independent basis on which to impose *respondeat superior* liability. As a result, the court did not abuse its discretion in refusing to give this instruction.

IV.     *The Jury Verdicts Are Supported by the Evidence*

¶26 Appellants contend Hoff and Benedict presented insufficient evidence to support a conclusion that: (1) Tejada breached any duty to them, (2) Hoff requires custodial care due to injuries she incurred from the accident, and (3) Benedict's daughters suffered a loss of consortium. Appellants argue the superior court erred in denying their motions for judgment as a matter of law and for a new trial based on the sufficiency of the evidence. We review de novo a ruling on a motion for judgment as a matter of law. *Glazer v. State,* 237 Ariz. 160, 167, ¶ 29 (2015). We review a superior court's denial of a motion for new trial for an abuse of discretion. *Styles v. Ceranski*, 185 Ariz. 448, 450 (App. 1996). We view the evidence in

the light most favorable to sustaining a jury verdict and will affirm if there is substantial evidence to support it. *Warrington v. Tempe Elementary Sch. Dist. No. 3*, 197 Ariz. 68, 69, ¶ 4 (App. 1999).

¶27 Viewing the evidence in that light, we conclude substantial evidence supported the jury's finding that Tejada, by driving negligently, breached a duty to Hoff and Benedict. The jury heard Tejada testify he was wearing sunglasses at the time of the accident, thirty minutes after sundown and after he had turned on the vehicle's headlights, as well as that he had taken his eyes off the road seconds before the accident to use his phone and to view the vehicle's dispatch device. And although both pedestrians had methamphetamine in their systems, the jury also heard testimony that other drivers saw Hoff and Benedict as they tried to cross the street. The evidence was sufficient for a jury to find that Tejada acted negligently.

¶28 Appellants also contend Hoff offered insufficient proof that Tejada's negligence caused her ongoing need for custodial care. Appellants cite no authority for their contention that Hoff was required to offer expert testimony to prove that injuries she suffered in the accident require custodial care. As for the sufficiency of the record to support the verdict, both expert and lay testimony established that it was the accident that rendered her in need of future custodial care. Hoff's father testified that Hoff drove a car before the accident, had average organizational skills, and managed her own money, but that after the accident she could not drive, cook, or even manage her own medication. Additionally, Dr. Leonard opined that Hoff was "going to be permanently and significantly disabled and incapable of taking care of herself or working" and that she would "need lifelong care . . . because of [the] permanent brain injury" that she incurred in the accident. Sufficient evidence supported the jury's determination that injuries Hoff suffered in the accident require custodial care.

¶29 Appellants also contend the damages award in favor of Benedict's daughters is unsupported by the evidence and instead was driven by speculation or sympathy. In a claim for loss of consortium, the jury determines the amount of recovery based on the degree of interference with the relationship between the decedent and the plaintiff. *Pierce v. Casas Adobes Baptist Church*, 162 Ariz. 269, 272 (1989). If the verdict is "so unreasonable and outrageous as to shock the conscience of th[e] court" because it was derived from passion or prejudice, we will remand for a new trial. *Stallcup v. Rathbun*, 76 Ariz. 63, 66–67 (1953). In determining the amount of damages to award a child of a decedent, the jury may consider

"the child's age, the nature of the child's relationship with the parent, the child's emotional and physical characteristics, and whether other consortium-giving . . . relationships are available for the child." *Villareal v. State, Dep't of Transp.*, 160 Ariz. 474, 481–82 (1989). It is true that the jury heard evidence that Benedict's involvement with his daughters was minimal, and that he had not seen either daughter for more than two years before the accident. However, considering the age of Benedict's children, who were in their teens when he was killed, and both daughters' testimony that they desired a relationship with their father, the superior court could properly conclude that the amount of the verdict did not shock its conscience and was not the result of passion or prejudice.

¶30 On this record, the superior court did not err in denying the motions for judgment as a matter of law, nor did it abuse its discretion in denying the motions for new trial based on sufficiency of the evidence.

## V. The Verdicts Were Not Inconsistent

¶31 Appellants contend that because the same six jurors did not agree on the verdict for Hoff and the verdict for Benedict's daughters, the verdicts were unlawful. Appellants further contend the verdicts were inconsistent because, based on the same evidence, they apportioned varying degrees of fault between Tejada and the two pedestrians. For these reasons, Appellants argue the superior court erred by not requiring clarification from the jury under Arizona Rule of Civil Procedure 49(f)(1). We review a superior court's denial of a motion for new trial for an abuse of discretion. *Styles*, 185 Ariz. at 450.

¶32 Article 2, Section 23, of the Arizona Constitution mandates: "The right of trial by jury shall remain inviolate. . . . In all . . . cases [excluding criminal cases], the number of jurors, not less than six, and the number required to render a verdict, shall be specified by law." By statute, unless otherwise agreed to by the parties, "[a] jury for trial in . . . a civil case shall consist of eight persons, and the concurrence of all but two shall be necessary to render a verdict." A.R.S. § 21-102(C); *see also* Ariz. R. Civ. P. 48.

¶33 Appellants' contention that the verdicts were unlawful because the six jurors who returned a verdict on Hoff's claim were not the same six who returned a verdict on Benedict's daughters' claim is without merit. Appellants rely on *MacConnell v. Maricopa Cnty. Med. Soc.*, 150 Ariz. 505, 507 (App. 1986), but there, this court held that the superior court erred by instructing the jury it could return a verdict "if as few as six of the nine jurors agreed" when the parties had not agreed to deviate from the

statutorily mandated three-fourths majority requirement to reach a verdict. Here, a three-fourths majority (six of the eight jurors) agreed on each of the two verdicts rendered.

¶34 Appellants further argue that because the jury apportioned fault differently in the two verdicts, the verdicts are inconsistent. Appellants rely on *Simkins v. Pulley*, 116 Ariz. 487 (App. 1977). In *Simkins*, a police officer and his two passengers all sued a driver who caused the officer to crash into a tree. *Id.* The claims were consolidated for trial, and the jury found the driver liable for causing the police officer's injuries but then found the officer liable to the passengers. *Id.* at 488–89. No such circumstance exists here. In both verdicts, jurors concluded Tejada was negligent, but they then apportioned less fault in the collision to Hoff than to Benedict. The facts here were unlike those in *Simkins*. Hoff and Benedict were not passengers traveling together in a car, but instead were pedestrians who each voluntarily headed across the dark street in the middle of the block. The jury also heard a witness testify Benedict grabbed Hoff's hand and seemed to tug her as they crossed the street. Accordingly, while the jury apportioned different percentages of fault to the two, the verdicts are not irreconcilable or inconsistent.

¶35 Moreover, even if the verdicts were inconsistent, Appellants failed to *affirmatively* ask the court to resubmit the case to the jury. A party who believes a verdict is defective or nonresponsive must move to have the case resubmitted to the jury to preserve the issue for appeal. *Trustmark Ins. Co. v. Bank One, Ariz., NA*, 202 Ariz. 535, 543, ¶ 39 (App. 2002); *Farmers Ins. Co. v. Tallsalt*, 191 Ariz. 177, 180 (App. 1997) (although verdict was not responsive, because neither party "asked the trial court to 'call the jurors' attention thereto, and send them back for further deliberation," issue waived on appeal), *vacated on other grounds*, 192 Ariz. 129 (1998); *Gonzales v. Gonzales*, 181 Ariz. 32, 35–36 (App. 1994) (although verdicts on damages were inconsistent, defendants' failure to invoke Rule 49(c) constituted waiver); *Berry v. McLeod*, 124 Ariz. 346, 350 (1979) (where counsel's statements to trial court suggested "consent" to not resubmitting verdicts to jury, party could not claim court erred in not sending verdicts back under Rule 49(c)). Here, where Appellants alerted the court to the alleged inconsistency in the verdicts but did not ask the court to resubmit the case to the jury, they waived any objection.

## CONCLUSION

¶36     For the reasons stated above, we affirm. As the prevailing parties on appeal, Hoff and Benedict may recover their costs upon compliance with Arizona Rule of Civil Appellate Procedure 21.



AMY M. WOOD • Clerk of the Court
FILED:     AA